JERI L. BILLINGTON v. RANDALL J. BILLINGTON
(14143)

PETERS, C. J., SHEA, CALLAHAN, GLASS and BORDEN, Js.

Argued June 6—decision released August 20, 1991

*Gerald L. Garlick,* with whom, on the brief, was *Alan Saltzman,* for the appellant (plaintiff).

*Randall J. Billington,* pro se, for the appellee (defendant).

*C. Ian McLachlan, William H. Narwold* and *Laura B. Welch* filed a brief for Connecticut Chapter of American Academy of Matrimonial Lawyers as amicus curiae.

BORDEN, J. The principal issue in this certified appeal[1] is whether a party to a marital dissolution judgment must establish, in order subsequently to open the judgment based upon a claim of fraud, that she was diligent during the original action in attempting to discover the fraud. We conclude that the movant need not establish such diligence, and accordingly reverse the judgment of the Appellate Court.

For purposes of this appeal, we accept the facts as stated by the Appellate Court. On June 19, 1987, the parties' marriage was dissolved pursuant to a judgment rendered by the court, *Mihalakos, J.*, that incorporated by reference a settlement agreement between the parties. "During the negotiations preceding the dissolution, the parties agreed to apportion between them certain pieces of real estate. The defendant [Randall J. Billington] received residential property located on Ellsworth Avenue in New Haven, and the plaintiff [Jeri L. Billington] received other real property of supposedly equal value. On his financial affidavit, the defendant assigned the Ellsworth Avenue property a value of $225,000. He failed, however, to disclose the fact that he had received a written offer of $380,000 for the parcel. On June 22, 1987, three days after the parties' mar-

---

[1] We granted certification to appeal from the judgment of the Appellate Court; *Billington* v. *Billington*, 23 Conn. App. 45, 578 A.2d 674 (1990); limited to the following three issues: "1. To prevail on a motion to open a judgment based on fraud, must the movant in a marital case establish diligence in attempting to discover the fraud?

"2. Is there a difference in marital cases between a fraud on the court and a fraud on the adverse party?

"3. Was the Appellate Court correct in deciding that the trial court should not have opened the judgment?" *Billington* v. *Billington*, 216 Conn. 827, 582 A.2d 205 (1990).

We regard the third issue as simply a summary of the first two, and, accordingly, we decline to consider the various alternative grounds for affirming the judgment of the Appellate Court offered in this court by the defendant. He may, of course, present those claims to the Appellate Court upon our remand.

riage was dissolved, the defendant accepted the offer and later conveyed the property for a renegotiated price of $360,000.

"The parties conducted their settlement negotiations in an atmosphere of mutual distrust and suspicion. Despite the contentiousness of the discussions, neither party obtained an independent appraisal of their real estate, nor did either party file motions for discovery or requests for production. Thus, the plaintiff did not discover the defendant's arrangement to sell the property until September or October, 1987." *Billington* v. *Billington*, 23 Conn. App. 45, 46–47, 578 A.2d 674 (1990).

In December, 1988, the plaintiff moved to open the judgment, claiming that the defendant had fraudulently concealed the value of the Ellsworth Avenue property.[2] Id., 47. The trial court, *Harrigan, J.*, found that the plaintiff had established fraud by nondisclosure and by misrepresentation. The court also found that there were no laches or unreasonable delay on the plaintiff's part, that she had not lacked diligence in attempting to discover the fraud,[3] that the fraud had been proven by clear and satisfactory evidence, and that there was a substantial likelihood that the result of a new hearing would be different. Accordingly, the court granted the plaintiff's motion as to the financial orders incident to the dissolution judgment, and ordered a new hearing

[2] The plaintiff also grounded her motion to open on a claim of mutual mistake. The trial court, finding fraud, did not address this claim, and it has not been raised in the subsequent appeals.

[3] More specifically, the trial court found that the parties' settlement had been predicated on a fair market value of $225,000 for the Ellsworth Avenue property, and that only the defendant and the buyers knew of the $380,000 sales price. The court also found that this disparity would not have been revealed even had the plaintiff obtained an appraisal of the property because it was a unique parcel. The court concluded that it could not "equate failure to obtain an appraisal with lack of diligence on the plaintiff's part."

with respect to those orders.[4] After the trial court, *F. Freedman, J.,* issued new financial orders, the defendant appealed from the new judgment to the Appellate Court.

The Appellate Court, relying principally on this court's decisions in *Jucker* v. *Jucker,* 190 Conn. 674, 677, 461 A.2d 1384 (1983), and *Varley* v. *Varley,* 180 Conn. 1, 4, 428 A.2d 317 (1980), agreed with the defendant that the plaintiff was barred from opening the judgment because she had not established that she had been diligent in attempting to discover the fraud.[5] Although the Appellate Court agreed with the trial court's finding that the defendant "could not have reasonably believed that the Ellsworth Avenue property was worth only $225,000," it determined that the plaintiff "made absolutely no effort to protect herself from the fraud of which she now complains." *Billington* v. *Billington,* supra, 48. The court reasoned that, had the plaintiff utilized available discovery procedures, she would probably have learned of the defendant's negotiations to sell the property for more than its listed value, and, had she secured an appraisal, she would have discovered that the defendant had substantially undervalued the property. Id.

The Appellate Court distinguished its earlier decision in *Greger* v. *Greger,* 22 Conn. App. 596, 578 A.2d 162, cert. denied, 216 Conn. 820, 581 A.2d 1055 (1990), in which it had reached a contrary result on a similar set of facts. The court concluded that, unlike this case, the

---

[4] Pursuant to Practice Book § 4002 (a), the defendant filed a notice of intent to appeal from the trial court's ruling.

[5] In view of this conclusion, the Appellate Court did not address the defendant's other claims, namely, that: (1) there was no clear evidence of fraud; (2) the plaintiff lacked clean hands; and (3) the plaintiff's motion to open the judgment was barred by laches. *Billington* v. *Billington,* 23 Conn. App. 45, 46 n.1, 578 A.2d 674 (1990). The defendant did not challenge the new financial orders.

trial court in *Greger* had explicitly found that the defendant had perpetrated a fraud on the court, and that the absence of such a finding in this case was significant. *Billington* v. *Billington,* supra, 49. Accordingly, the Appellate Court reversed the new judgment and remanded the case with direction to reinstate the original judgment. Id. This appeal followed.

We granted certification in order to determine: (1) whether our law should continue to require a marital litigant to exercise diligence in discovering her marital partner's fraud as a condition of opening a judgment concerning the financial aspects of the dissolution of their marriage on the basis of that fraud; and (2) in this context, whether there should be a difference between fraud on the court and fraud on the adverse party. For the reasons that follow, we conclude that a requirement of diligence in the discovery of marital fraud should be abandoned, but that the concept of a fraud on the court is properly confined to situations where both of the parties intentionally conceal material information from the court.

I

We turn now to the first certified issue. " 'Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed.' " *Alexander* v. *Church,* 53 Conn. 561, 562, 4 A. 103 (1886), quoting T. Cooley, Torts p. 474. The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment. *Maturo* v. *Gerard,* 196 Conn. 584, 587, 494 A.2d 1199 (1985); *Miller* v. *Appleby,* 183 Conn. 51, 54–55, 438 A.2d 811 (1981). A marital judgment based upon a stipulation

may be opened if the stipulation, and thus the judgment, was obtained by fraud. *Kenworthy* v. *Kenworthy,* 180 Conn. 129, 131, 429 A.2d 837 (1980). "The power of the court to vacate a judgment for fraud is regarded as inherent and independent of statutory provisions authorizing the opening of judgments; hence judgments obtained by fraud may be attacked at any time." Id.

In *Varley* v. *Varley,* supra, 4, we imposed four limitations on the granting of relief from a marital judgment secured by fraud: "(1) There must have been no laches or unreasonable delay by the injured party after the fraud was discovered. (2) There must have been diligence in the original action, that is, diligence in trying to discover and expose the fraud. (3) There must be clear proof of the perjury or fraud. (4) There must be a substantial likelihood that the result of the new trial will be different."[6] We reiterated those four limitations in *Jucker* v. *Jucker,* supra, 677. The Appellate Court has applied these limitations as well. See *Gelinas* v. *Gelinas,* 10 Conn. App. 167, 174, 522 A.2d 295, cert. denied, 204 Conn. 802, 525 A.2d 965 (1987); *Grayson* v. *Grayson,* 4 Conn. App. 275, 286, 494 A.2d 576 (1985); *Jackson* v. *Jackson,* 2 Conn. App. 179, 189, 478 A.2d 1026 (1984); but see *Greger* v. *Greger,* supra, 599–600 (express finding of fraud on court required that judgment be opened without regard to four limitations). In this case, we are concerned only with the second of these limitations, namely, that the party seeking to open the judgment exercised diligence in the original action in order to discover and expose the fraud. We are persuaded that the time has come to abandon that limitation.

First, the authorities upon which *Varley* relied for the "diligence" limitation; F. James, Civil Procedure

---

[6] We also noted that "the granting of such relief must not unfairly jeopardize interests of reliance that have taken shape on the basis of the judgment." *Varley* v. *Varley,* 180 Conn. 1, 4, 428 A.2d 317 (1980).

(1965) § 11.7, pp. 540–42; note, 36 Ill. L. Rev. 894, 896–97 (1942); Restatement (Second), Judgments § 116 (Tent. Draft No. 6, 1979); were drawn primarily from the commercial context, and did not address the special considerations that are inherent in litigation over the dissolution of a marriage. Indeed, we have recognized that "[a]nalogies drawn from commercial litigation fail to respond adequately to the situation of emotional trauma commonly associated with the irretrievable breakdown of a marriage." *Monroe v. Monroe,* 177 Conn. 173, 182, 413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979); see also *Grayson* v. *Grayson,* supra, 298. The established principle that due diligence is required in commercial transactions therefore has no applicability in the marital context.

Furthermore, the diligence requirement is inconsistent with the nature of a marital dissolution case and with the rights and obligations arising out of the marital relationship that it legally terminates. Our Practice Book has long required that "at the time a dissolution of marriage, legal separation or annulment action is claimed for a hearing, the moving party shall file a sworn statement . . . of current income, expenses, assets and liabilities, and pertinent records of employment, gross earnings, gross wages and all other income." Practice Book § 463. The opposing party is required to file a similar affidavit "at least three days before the date of the hearing . . . ." Practice Book § 463.

Our cases have uniformly emphasized the need for full and frank disclosure in that affidavit. "A court is entitled to rely upon the truth and accuracy of sworn statements required by § 380 [now § 463] of the Practice Book, and a misrepresentation of assets and income is a serious and intolerable dereliction on the part of the affiant which goes to the very heart of the judicial

proceeding." *Casanova* v. *Casanova,* 166 Conn. 304, 305, 348 A.2d 668 (1974). "These sworn statements have great significance in domestic disputes in that they serve to facilitate the process and avoid the necessity of testimony in public by persons still married to each other regarding the circumstances of their formerly private existence." *Cohen* v. *Cohen,* 11 Conn. App. 241, 247, 527 A.2d 245 (1987); see also *O'Bymachow* v. *O'Bymachow,* 12 Conn. App. 113, 118–19, 529 A.2d 747, cert. denied, 205 Conn. 808, 532 A.2d 76 (1987) (defendant entitled to rely on information in plaintiff's financial affidavit); *Gelinas* v. *Gelinas,* supra, 175 (recognition of "the need for a full and fair disclosure of information contained in a financial affidavit"); *Grayson* v. *Grayson,* supra, 287 ("compliance with the rules concerning the filing of financial affidavits is essential in order for the court to make a reasoned decision with respect to such orders"); *Jackson* v. *Jackson,* supra, 188 ("[t]he sworn financial statements of the parties under Practice Book § 463 have great significance in domestic disputes"). Thus, the requirement of diligence in discovering fraud is inconsistent with the requirement of full disclosure because it imposes on the innocent injured party the duty to discover that which the wrongdoer already is legally obligated to disclose.

Moreover, in *Monroe* v. *Monroe,* supra, we referred to the requirement of full and frank disclosure between attorney and marital client. "[L]awyers who represent clients in matrimonial dissolutions have a special responsibility for full and fair disclosure, for a searching dialogue, about all of the facts that materially affect the client's rights and interests." Id., 183. In *Baker* v. *Baker,* 187 Conn. 315, 322, 445 A.2d 912 (1982), we imposed this requirement of honest disclosure between the litigating parties and the court. It is a logical extension of those precedents to require such full and frank disclosure as well between the marital litigants themselves.

This principle of complete disclosure is consistent with the notion that "the settlement of a marital dissolution case is not like the settlement of an accident case. It stamps with finality the end of a marriage. 'Marriage is a coming together for better or worse, hopefully enduring, and intimate to the degree of being sacred. It is an association that promotes a way of life, not causes; a harmony in living, not political faiths; a bilateral loyalty, not commercial or social projects.' *Griswold* v. *Connecticut,* 381 U.S. 479, 486, 85 S. Ct. 1678, 14 L. Ed. 2d 510 (1965). Courts simply should not countenance either party to such a unique human relationship dealing with each other at arms' length. Whatever honesty there may, or should, have been during the marriage should at least be required by the court at its end." *Grayson* v. *Grayson,* supra, 299–300 (*Borden, J.,* dissenting).

We have recognized, furthermore, in the context of an action based upon fraud, that the special relationship between fiduciary and beneficiary compels full disclosure by the fiduciary. See *Pacelli Bros. Transportation, Inc.* v. *Pacelli,* 189 Conn. 401, 407–409, 456 A.2d 325 (1983). Although marital parties are not necessarily in the relationship of fiduciary to beneficiary, we believe that no less disclosure is required of such parties when they come to court seeking to terminate their marriage.

Finally, the principle of full and frank disclosure, with which the diligence limitation is inconsistent, is essential to our strong policy that the "private settlement of the financial affairs of estranged marital partners is a goal that courts should support rather than undermine." *Baker* v. *Baker,* supra, 322; *Hayes* v. *Beresford,* 184 Conn. 558, 568, 440 A.2d 224 (1981); *Lavigne* v. *Lavigne,* 3 Conn. App. 423, 426, 488 A.2d 1290 (1985); *Grayson* v. *Grayson,* supra, 299. That goal requires, in turn, that "reasonable settlements have been knowingly agreed upon." *Monroe* v. *Monroe,* supra, 184.

"Our support of that goal will be effective only if we instill confidence in marital litigants that we require, as a concomitant of the settlement process, such full and frank disclosure from both sides, for then they will be more willing to forego their combat and to settle their dispute privately, secure in the knowledge that they have all the essential information." *Grayson* v. *Grayson,* supra. This principle will, in turn, decrease the need for extensive discovery, and will thereby help to preserve a greater measure of the often sorely tried marital assets for the support of all of the family members.

Although we recognize the need for finality of litigation and stability of judgments, the considerations we have discussed sufficiently outweigh those interests of finality and stability in the marital litigation context so as to require the abandonment of the diligence requirement. We believe that the need for finality and stability is adequately protected by the remaining limitations upon the granting of relief from fraud. See *Varley* v. *Varley,* supra.

## II

We now turn to the second certified issue, namely, whether there is a distinction between fraud on the court and fraud on the adverse party in the context of a marital dissolution case. We conclude that, although there is such a distinction, the concept of fraud on the court is properly limited to cases where both parties join to conceal material information from the trial court.

A review of the recent cases developing the concept of fraud on the court in the context of a marital dissolution is in order. In *Baker* v. *Baker,* supra, 322, both parties to a marital dissolution entered into an agreement that "by its own terms specifically provided that it be concealed from the trial court." This court determined that such an agreement was contrary to public policy

and unenforceable; id.; because its concealment deprived the court of the means to discharge its statutory obligation " 'to determine whether a settlement agreement is "fair and equitable under all the circumstances." General Statutes § 46b-66. . . .' " Id., 321.

In *Greger* v. *Greger,* supra, the plaintiff moved in the trial court to open the judgment dissolving her marriage because the defendant had provided the court with a fraudulent financial affidavit. The defendant had fraudulently represented in his affidavit that his closely held insurance business had no value, although he had recently sold it for $340,000. The trial court explicitly found that the defendant's conduct constituted fraud on the court, but it declined to open the judgment because it determined that the plaintiff had not exercised due diligence in discovering the fraud. Id., 598. Relying on *Baker*, the Appellate Court reversed, concluding that the judgment should have been opened because "[o]nce the trial court expressly found that the defendant had perpetrated a fraud on the court . . . the law required that the judgment be opened." *Greger* v. *Greger,* supra, 599–600. The Appellate Court did not distinguish, however, the factual differences underlying the finding of fraud on the court in that case from the finding in *Baker,* nor did it distinguish the concept of fraud on the court from the concept of fraud on the adverse party. In the present case, the Appellate Court declined to follow *Greger* and apply the doctrine of a fraud on the court, despite a factual situation quite similar to *Greger,* solely because the trial court had not made an explicit factual finding that the defendant had perpetrated a fraud on the court. *Billington* v. *Billington,* supra, 49.

These cases demonstrate that the concept of fraud on the court was originally employed where *both* parties joined to conceal material information from the trial court. *Baker* v. *Baker,* supra. That concept was expanded

in *Greger* to include a case where the trial court explicitly found that the conduct of one of the marital litigants constituted fraud on the court. The Appellate Court declined to apply the concept in this case, however, because the trial court had not made such an explicit finding. Although we agree with the Appellate Court that there is, in the marital litigation context, a difference between a fraud on the court and a fraud on the adverse party, we disagree that the distinction lies in whether the trial court has explicitly made a finding of fraud on the court. Such a distinction is unworkable and leads to injustice, as a comparison of this case and *Greger* demonstrates. The difference lies, rather, in the nature of the conduct of the parties.

The similarity between the frauds practiced in *Greger* and in this case is striking. In both, the defendant either had sold or had received a bona fide offer to purchase a known asset for a large sum of money, and grossly undervalued it on his financial affidavit. Thus, hinging a determination of fraud on the court on whether the trial court had made such an explicit factual finding, as the Appellate Court did in *Greger* and this case, was an artificial basis for decision, since the underlying conduct was essentially the same in both cases.

Indeed, whenever one party has submitted a fraudulent financial affidavit with intent to induce the other party to rely thereon, it could be said that he intended the court to rely thereon as well and thereby has, in some sense, "defrauded" the court. Applying the "fraud on the court" doctrine in such a case, however, would relieve the moving party from satisfying the remaining limitations on the granting of relief from a marital judgment secured by fraud; see *Varley* v. *Varley*, supra; and would render those limitations superfluous.

We do not believe that the concept of fraud on the court should be so expanded. We conclude, therefore,

that the concept of fraud on the court in the marital litigation context is properly confined to situations where both parties join to conceal material information from the court. See *Baker* v. *Baker,* supra.

The judgment of the Appellate Court is reversed and the case is remanded to that court to determine the other issues raised by the defendant.

In this opinion the other justices concurred.