[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife, 34, and the defendant husband, 43, intermarried at Waterbury, Connecticut on May 31, 1980. Jurisdiction is based on the plaintiff's continuous residence in Connecticut for over one year prior to August 27, 1992 when the summons and complaint were issued. There is one child of the marriage, Anibal Rodriguez born June 21, 1981, the only child born to the plaintiff since the marriage. The court finds that the marriage has broken down irretrievably.
At the time of the parties' marriage, the defendant owned and operated a grocery store located on South Main Street, Waterbury known as Bargain Food Center which he had purchased in 1977 for $19,000 with money he saved. In 1984 the defendant purchased the building known as 626 South Main Street where the store was situated. The defendant has two daughters born during his initial marriage which was dissolved in July, 1979. The plaintiff had graduated from high school in 1978 and had done some factory work thereafter. After the marriage, the plaintiff did not work at the store or otherwise assist the defendant in his business activities. CT Page 8232
Both parties testified that after one year they argued constantly. The defendant moved out in 1986 to an apartment over his store. He has been back and forth to the home since but a complete reconciliation never occurred.
The plaintiff testified that the defendant was never around, but when he was, they never talked. After the first year of the marriage, the defendant came home after midnight.
The defendant's store was open from 6:00 a.m. to 10:00 p.m. from Monday through Friday, 6:00 a.m. to 8:00 p.m. on Saturday and from 6:00 a.m. to 1:00 p.m. on Sunday. In addition to the defendant, the defendant's father, the defendant's brother and the defendant's nephew worked in the store, with a payroll over $900 weekly paid in cash. The cash flow generated by the business enabled the defendant to pay cash or certified check on April 2, 1984 for a three-family house located at 50 Jewelry Street, Waterbury (Plaintiff's Exhibit B, deed). He acquired the premises where the store is located on South Main Street for $66,750 in November, 1984 (Plaintiff's Exhibit C). The defendant gave a mortgage for $35,000 as part of the purchase price which he was able to satisfy from the daily numbers account at North American Bank. The account record for the period December 7, 1989 to January 4, 1990 (Plaintiff's Exhibit R) indicates lottery sales averaging $3,500 weekly from which, at 5% Commission, $175 is earned for the defendant weekly.
The defendant purchased another parcel of real estate in West Palm Beach, Florida for $52,000 in December, 1991 (Plaintiff's Exhibit E), also paid for in cash.
As a starting point the defendant's financial affidavit filed in Docket #046373, Anibal Rodriguez v. Nitca Rodriguez on January 25, 1979 listed the grocery store valued at $10,000 (approx.), a bank account for $4,000 and two autos. Since that time the defendant has prospered for, in addition to the real estate parcels discussed above, the defendant was able to save money in various C.D.'s, bank accounts and in cash. On September 11, 1992, the defendant redeemed two North American Bank C.D.'s for $94,357.84 and $58,408.04 (Plaintiff's Exhibit F). On September 17, 1992, the defendant withdrew First Federal Bank savings accounts for $15,994.67, $19,427.11, $19,214.38, $15,266.23 and $31,031.75 (Plaintiff's Exhibit H). All of the above withdrawals total $207,402.04. A prior withdrawal of CT Page 8233 $50,000 made on October 30, 1989 went unexplained as to its purpose.
The defendant was most modest in testifying that his business gradually grew. His business activities were so successful that the parties' 1989 1040 tax return listed $32,661.53 taxable interest income (Plaintiff's Exhibit N) as well as $96,745.73 gross profit from the grocery store. The parties' 1988 1040 tax return listed $17,546.71 taxable interest income (Plaintiff's Exhibit L) as well as $64,243 gross income from the grocery store. In 1987 the grocery store produced $72,542 gross profit, i.e. gross income (Plaintiff's Exhibit K). For 1990 the parties' 1040 listed $20,392 taxable interest income as well as $92,541 gross income (Plaintiff's Exhibit N). The defendant filed separately for 1991, listing $26,628 taxable interest income and $63,575 gross income from his store (Plaintiff's Exhibit O).
Once the plaintiff began this action, the interest income melted away to $8,231 on the defendant's 1992 1040 (Plaintiff's Exhibit P) and $48,251 gross income from the store. It is noted that lottery commissions totaled $10,176 for the year.
The picture which the evidence draws is art industrious store owner who is able to save substantial sums of money over a decade, who employs family members whose pay appears nowhere, and who took various defensive measures to protect his assets and income from the plaintiff and from the court.
The court finds the defendant's financial affidavit to be an affront to the court, unbelievable and made in total disregard to the law as set forth in Billington v. Billington,220 Conn. 212.
The defendant admitted to husbanding over $150,000 but under $200,000 in cash in 1992 after he withdrew his various bank accounts. No believable explanation was given regarding the alleged dissipation of these funds. Since the defendant started a dissolution action in 1991 which was eventually abandoned, he became aware of the full disclosure called for by litigants contesting a marriage dissolution. The evidence demonstrates (Plaintiff's Exhibit F) that the grand total of withdrawals was over $207,000 by September, 1992.
The plaintiff's expert witness, a C.P.A., testified that, CT Page 8234 in his opinion, the grocery business had a fair market value of $283,500. A telling point made during the testimony of this expert was the fact that the defendant's store had enabled the defendant to acquire over $500,000 since buying the store.
The difficulty in this case is to what extent should the plaintiff share in the defendant's estate. The plaintiff admits that the defendant is a good person. She admits that she did nothing to make the marriage work. She acknowledges that she has made no effort to find employment since receiving her certification as a nurse's aide one year ago. The defendant acknowledged that the plaintiff was faithful and loyal. The parties never talked to each other, understandable when the defendant is working day and evening.
This case has the same element found in Pappageorge v. Pappageorge, 12 Conn. App. 596. The husband fulfilled his financial obligations to his spouse and children, lived apart from them for many years and the assets he acquired were not acquired with any assistance by his spouse.
The court finds the defendant's explanation of the dissipation of his cash cache to be incredible. The court concludes that the defendant's cash horde has disappeared. The cash accretion over the past several years came from the defendant's efforts. However, the court is satisfied that the plaintiff's witness' letter is correct in asserting that the income tax earnings cannot account for the accumulated cash assets, (Plaintiff's Exhibit S).
The court concludes that the defendant's net disposable income is at least $1,200 weekly. The plaintiff never worked during the marriage but she is a high school graduate and did obtain a nurse's aide certificate a year ago. The court has no evidence upon which to found an earnings capacity for the plaintiff. Therefore, for child support purposes, the plaintiff is to be charged with $200 income and the defendant with $1,000 income weekly. The parties agreed that the present fair market value of 50 Jewelry Street is $55,000 and the fair market value of the store premises is $116,000. The latter contains six rental units in addition to the defendant's apartment.
The court, having analyzed the evidence in light of the statutory criteria, enters judgment dissolving the parties' marriage and, as part of the decree, the following: CT Page 8235
1. Sole legal and physical custody of the minor child is placed in the mother. The father is awarded reasonable visitation rights.
2. The defendant is ordered to pay $200 weekly periodic alimony until the remarriage of the plaintiff or the death of either party.[1]
3. The defendant is ordered to pay child support to the plaintiff in the weekly sum of $259. The sum is arrived at by deducting the $200 weekly alimony from the defendant's net of $1,200 arrived at above, and allocating the total child support of $314 for $1,200 combined incomes 82.5% to the defendant.
4. The plaintiff is awarded sole ownership of 50 Jewelry Street, Waterbury, Connecticut free and clear of all liens except current taxes. The defendant shall assign the current fire and liability policies to the plaintiff together with any security deposits or advance rental payments.
5. The defendant shall retain sole ownership of the real estate known as 622-624-626 South Main Street, Waterbury.
6. The defendant shall pay a lump sum to the plaintiff in the amount of $58,000, secured by a first mortgage on the South Main Street property with simple interest thereon at 5% per annum, with eight (8) principal payments in the amount of $7,250 together with interest on the unpaid balance, one due and payable on the first eight (8) anniversary dates of this judgment. The documentation shall be prepared at the defendant's expense.
7. The defendant shall retain his business known as Bargain Food Center.
8. The defendant shall retain ownership of the Florida condominium unit.
9. The parties shall otherwise retain the tangible possessions and bank accounts they now possess, and they shall be solely responsible for the debts listed on their respective financial affidavits.
10. The defendant shall maintain his life insurance policy CT Page 8236 written by Golden Rule, for naming the minor child as beneficiary at least until the child's 18th birthday.
11. The defendant is ordered to pay an allowance to prosecute to the plaintiff of $25,000 with half payable by November 30, 1993 and the remaining half on or before April 1, 1994.
12. The court does not order any medical insurance at this time for no evidence was presented as to the cost to cover the minor child. The parties shall divide the health care costs incurred for the care of their minor child.
Counsel for the plaintiff is directed to draft the judgment file.
HARRIGAN, J.