[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife commenced this action, returnable November 24, 1992, seeking a dissolution of the parties' marriage on the ground of irretrievable breakdown, and an assignment of the defendant husband's interest in the jointly-owned dwelling. She also seeks other relief. The defendant admitted all of the allegations in the complaint and filed a cross-complaint alleging an irretrievable breakdown of the marriage. He also seeks a dissolution of the marriage on that ground, and an equitable division of all real and personal property. He later amended his cross-complaint to claim alimony, an assignment of all or a portion of the family dwelling and other relief. The parties were represented by counsel throughout the proceedings, including trial.
Both parties testified and filed financial affidavits. Other documentary evidence was introduced and the wife's sister, Ms. Campbell, and the real estate agent, Ms. Lutzen, who handled the sale of the dwelling to them, also testified.
The court also heard oral argument and gave leave to the plaintiff to file copies of the parties' joint tax returns for the years 1989-1991, inclusive, on or before January 19, 1994, as of which date the trial would be deemed completed. The parties also filed written claims for relief and the wife filed a trial CT Page 624 memorandum.
From this evidence, the court finds the following facts.
The plaintiff wife, whose maiden name was Karen C. Campbell married the defendant November 12, 1988 at Niantic, Connecticut. She has resided continuously in this state for at least one year before the filing of her complaint. All statutory stays have expired and the court has jurisdiction. There are no minor children issue of this marriage, and no minor children were born to the wife since the date of the marriage. Neither party is a recipient of public assistance.
The wife is 40 years of age, in good health, and has two sons, now ages 12 and 13 from her prior marriage which was dissolved. She works as a radiology supervisor for Middlesex Memorial Hospital and now earns about $44,000 gross per annum. She has worked there for the past five years. She is certified as an ultrasound technician and is on a course for her bachelor's degree, which she expects to complete in about a year. Her earnings have approximately doubled over the past five year period.
The husband is 42 years of age, and in good health, with the exception of a "pinched nerve" in his neck, which causes him pain sporadically. He is a high school graduate, with a trade school degree in electricity. He now is `self-employed' by his corporation, Hoganbor, Inc., a contracting business, of which he owns all of the issued and outstanding stock.[1] He also works in a tavern. He has a State of Connecticut home improvement contractor's license, which is current. Over his career, he has been variously employed as a bartender, insurance salesman and in construction. He has also worked in an automobile body shop, grocery store and dry cleaners. This is his first marriage.
He shows $192.30 per week gross income from his business on his financial affidavit, and omits any income from his tavern job. He also claims that in exchange for being taught `appliance repair', he is obtaining a loan from one Fitzgerald at the rate of $100 per week.
The wife testified that the cause of the breakdown of this slightly more than five years marriage was the defendant's failure to participate in family activities, and his not communicating. She claims he spent much of his time in front of CT Page 625 the TV, that he did not actively seek and pursue work and that he did not pull his weight around the home. He was also very negative with her children and was harsh to them, causing them unhappiness. On occasion, she was called home from work by the children to deal with problems involving him. He also refused to allow a key to the house to be hidden at the house. This resulted in the boys' `lock out' from time to time. The husband denies a poor relationship with the boys, claims that he only tried to discipline them because they could use it, and claims that he did his best in the marriage. The parties tried counseling for a few months which did not help, and the husband vacated the home around May of 1993. He now concedes that the marriage has broken down irretrievably and the court so finds. The court also finds the wife's testimony as to the cause of the breakdown credible, and therefore concludes that a larger share of the responsibility for the breakdown of the marriage must rest on the husband's shoulders.
The parties' major asset is the jointly-owned family home, 120 Laurel Wood Drive, Niantic, Connecticut, which the court finds has a value of $124,000, which after the deduction of the present mortgage balance of $56,000, leaves an equity of $68,000. The court notes the plaintiff's claim that the sewer assessment lien of $7,200 should be subtracted from the equity; however, the sewer system has not yet been connected, and this claim is not persuasive. The plaintiff's appraisal report notes that the sewer system is in the process of installation, but does not comment on the appreciation in value, if any, to the dwelling, as a result.
The home was purchased prior to the parties' marriage for $177,400 plus closing costs of $1,819 and placed in joint names. The wife contributed $99,219 derived from her first marriage to the purchase, the husband $5,000, and the balance was paid by a bank mortgage of $75,000.
During the almost five years the parties resided together in the home, the husband made the mortgage payments, and, on occasion, prepaid some principal. The wife paid all of the other household expenses. The husband also claims that he contributed "sweat equity" to the home by installing a central vacuum system, ceiling fans, relocating a deck and installing another deck, a driveway, and some landscaping. The materials were paid for at least in part by the husband's corporation. There was no evidence as to whether any of these items, either separately or together, CT Page 626 added any value whatsoever to the home. In fact, the house declined in value over $53,000 since its purchase, causing the parties a substantial `paper' loss, almost all of which must be borne by the plaintiff wife.
The husband also claims a contribution for certain appliances purchased by him, in part from funds obtained through a `kickback' of a portion of the real estate commission from the broker who sold the parties the home. This claim has no merit. The husband also gave the wife the sum of $3,000 which she used to pay off her credit card balances at the time of the house purchase.
The husband also closed out two joint bank accounts and obtained the proceeds, approximately $2,000.
The wife's financial contributions to the marriage, and her non-monetary contributions, were far greater than those of the husband. The court is not persuaded by husband's claim of credit for the mortgage principal pay down and that he should be repaid something on that account. His making of the mortgage payments were simply his share of the living expenses, and were more than balanced by the wife's payments for food, utilities, insurance and all of the other household expenses. In this regard, the court notes that the household included the wife's two children. The wife also paid for the defendant's health insurance premiums and his attorney's fees on an unrelated matter. In addition, she provided him with weekly spending money.
The court likewise is not persuaded by the defendant's claim that he substantially contributed to the wife's increased earning capacity and education by helping out at home during her six month school/work-training period. During that time, she also received income from her school/work-training program, plus child support, which she applied to family expenses.
The court also notes that the husband's financial affidavit was inaccurate in several respects, including his failure to show his tavern income, and his failure to value his corporate business. He also failed to provide corporate, bank and business records to verify his income claims, although this was subpoenaed by the plaintiff's attorney.
 Our cases have uniformly emphasized the need for full and frank disclosure in that CT Page 627 affidavit. A court is entitled to rely upon the truth and accuracy of sworn statements required by 380 (now 463) of the Practice Book, and a misrepresentation of assets and income is a serious and intolerable dereliction on the part of the affiant which goes to the very heart of the judicial proceeding. These sworn statements have great significance in domestic disputes in that they serve to facilitate the process and avoid the necessity of testimony in public by persons still married to each other regarding the circumstances of their formerly private existence. (Internal citations and quote marks omitted.)
Billington v. Billington, 23 Conn. App. 45 (1990), rev'd220 Conn. 212, 219-220 (1991). It is essential that counsel and the parties comply with the rules concerning the filing of financial affidavits and supporting information so that the court is able to make a reasoned decision with respect to financial orders. The failure of the defendant to forthrightly and fully comply with the rules has unduly hampered the court's ability to do so in this case, and has caused the plaintiff to incur expenses for attorney's fees and sheriff's fees.
The court does not find the defendant's testimony credible as to his financial picture, and rejects his claim for alimony. The court rather finds that he has an earning capacity in excess of $25 per hour, and a number of vocational skills. He has significant employability but has voluntarily reduced his earnings in a misguided attempt to buttress his position in this litigation. The court also does not find credible his claim of receiving $100 per week as a loan from Fitzgerald, as there was no independent documentation of it. His financial affidavit shows total expenses of $300 per week, but this includes a claim of $174[2] per week to his parents, with whom he lives. The defendant can easily support himself. Moreover, the wife has a shortfall between her expenses and liabilities and income, two young sons to raise and sporadically receives child support. She therefore has no ability to pay alimony, even if it were merited. The only other significant asset the parties have are the 39 Series E bonds with a face value of $100 each. These were purchased by the wife through payroll deductions from her income. CT Page 628
The court has weighed and considered all of the criteria in General Statutes 46b-81 and 46b-82 and orders as follows:
A decree dissolving the marriage shall enter on the ground of irretrievable breakdown. All right, title and interest in the family home known as No. 120 Laurel Wood Drive, Niantic, Connecticut, shall be owned and held by the plaintiff wife, subject to the first mortgage thereon and the sewer assessment and real estate taxes, which she shall pay and save the husband harmless therefrom. He shall forthwith execute and deliver to the wife a quit claim deed to said premises and a release of the lis pendens thereon.
The wife shall execute and deliver to him a promissory note secured by a second mortgage on the premises in the amount of $3,000 payable without interest on the first to occur of the following events: wife's remarriage, sale of the home, ceasing to reside there as her principal residence or January 2, 1998.
The 39 Series E bonds shall be divided equally.
The husband shall pay to the wife the sum of $750 in attorney's fees and $137.70 in sheriff's fees, a total of $887.70, expended by her in attempts to obtain financial information from the defendant. The husband's share of the bonds may be held in escrow until the payment to her of $887.70. If not paid within thirty (30) days hereof, the plaintiff shall be permitted to sell sufficient bonds to cover this expense and any income taxes incurred by her due thereon, and she shall remit the balance of the cash and bonds, if any, to husband.
Each shall keep and have the personal property in their respective possession, except as later set forth, including bank accounts, life insurance policies and automobiles. The husband shall take and have his corporate stock free of wife's claims or interest.
Wife shall have her pension plan free of husband's claims or interest.
Each shall pay the liabilities shown on Schedule 3 of their respective financial affidavits.
Wife shall turn over to husband the following items of personal property within thirty (30) days hereof: CT Page 629
The antique mirror, his birth certificate, passport and other personal papers, the queen size comforter and the china received from his parents.
All documents or instruments necessary or incidental to effect these orders shall be executed and delivered within thirty (30) days hereof.
In the event husband desires to continue or convert his health and medical insurance coverage under wife's job-related group health insurance policy under the Consolidated Omnibus Budget Reconciliation Act (COBRA) and/or pursuant to the provisions of General Statutes 38a-538, he may do so at his sole expense, and wife shall cooperate in the securing such continuation or conversion of coverage.
The wife's birth name shall be restored.
Teller, J.