[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CT Page 1021
The plaintiff wife commenced this action for a legal separation by complaint returnable February 2, 1993. She alleges that the marriage of the parties has broken down irretrievably and seeks alimony, a property settlement and other relief. The defendant husband admitted in his answer that the marriage had broken down irretrievably, and in his cross-complaint affirmatively alleged that ground, and seeks a dissolution of the marriage, an equitable division of the marital assets and other relief. Both parties were represented by counsel throughout the proceedings, including trial.
At the hearing, the parties testified, filed financial affidavits, submitted proposed written claims for relief and introduced a number of documentary materials into evidence. At the conclusion of the hearing on November 30, 1993, the parties requested and were granted until January 18, 1994 to file simultaneous briefs, social security benefit statements for each party in the light of their ages and present employment status, pro forma rental income and expense statements for each of their rental properties, and other information relating to husband's pension/retirement plan benefits, the current value of his Keough plan, and health and life insurance. The parties also desired time within which to determine whether it would be advantageous for them to file joint federal and state income tax returns. The court advised that it would declare the trial completed on the date the briefs were to be filed, and if reply or supplemental briefs were to be filed, no later than January 31, 1994. The parties filed briefs and supplemental materials and did not file reply briefs.
From the evidence, the court makes the following findings.
The plaintiff wife, whose birth name was Mary Gonsalves, married the defendant husband on March 2, 1957 in Stonington, Connecticut. She has resided continuously in this state for at least one year before the date of the complaint, which was December 8, 1992. All statutory stays have expired and the court has jurisdiction. The parties had three children, issue of the marriage, all of whom have reached their majority. No other minor children were born to the wife since the date of the marriage, and neither party is a recipient of public CT Page 1022 assistance.
The wife will be 61 years of age on January 13, 1994, is in good physical health, completed one year of high school in Portugal, and is not a United States citizen, but has established legal residence here. She entered this country in 1951 and worked at a velvet mill as a factory worker for twelve years including the first seven years of the parties' marriage. She left that employment after her first two children were born, and was the primary caretaker of the parties' children throughout the marriage, with the assistance of the husband's mother in the early years. She also did the majority of the household cooking cleaning, shopping etc. She was the primary homemaker, after she left her velvet mill employment, throughout the marriage. In addition, she regularly cleaned the parties' rental properties. From time to time, she also managed them when the husband was out to sea on his commercial fishing trips.
The husband will be 64 years of age on June 30, 1994, is in good health, received a high school equivalency diploma, and is a United States citizen. He worked steadily throughout the marriage; first, as a welder for about 26 years at Electric Boat, until he was fired (about 1977); then until recently, he worked as a commercial fisherman. He also managed the parties' rental properties which consisted of a twelve unit apartment house, a three unit apartment house, and two condominium units. When not at sea he made plumbing electrical and other repairs on the properties. He is now unemployed.
This marriage of more than 36 years duration, finally broke down when the parties separated September 1992 as the immediate result of the husband hitting the wife several times with a pan. He also destroyed much of her clothing by cutting it up with a sheet metal knife. She obtained a restraining order forcing the husband to move out of the family home, where she now resides with an adult daughter who pays some room and board. The husband resides alone in one of the rental units.
The marriage was punctuated by isolated acts of violence committed by the husband upon the wife. He also had a sexual relationship with his stepmother over 25 years ago. The husband claims however, that the wife was stubborn and rigid, and that they were unable to reasonably and rationally discuss family matters. This court finds this claim supported by the evasive manner in which the wife testified and her demeanor on CT Page 1023 the witness stand. Despite this claim, the court also finds that the husband was the dominant and domineering partner in this marriage, and that a larger share of the responsibility for its breakdown must be placed upon his shoulders.
The parties have accumulated significant assets as can be seen from their financial affidavits, tax returns and the evidence. The husband forged his wife's name to their 1992 federal income tax return and obtained a tax refund of $5308.25 which he used for his own purposes. He also withdrew $50,000 from his Keough plan, from which was withheld $19,000 for income taxes. He claims to have paid bills and taxes with the $31,000 net proceeds of that withdrawal, but the court does not find this claim wholly credible, as there was little, if any, supporting documentation.
The wife showed no income received from her adult daughter by way of rental, room and board or the like, on her financial affidavit; and this casts doubt on her credibility. The husband similarly neglected to show his small monthly pension and his interest in real property inherited by him from his parents in Portugal. The court does not condone the parties' actions in this regard, as they frustrate the ability of the court to determine the true financial status of the parties. The court and the parties have the right to rely on financial affidavits submitted in an action for dissolution, and it is the duty of each party to fully and fairly disclose his or her assets, income, expenses and liabilities. See Billington v. Billington, 23 Conn. App. 45 (1990), rev'd 220 Conn. 212, 219-220
(1991).
Although the amount of each party's annual earnings throughout the marriage was not introduced into evidence, with the exception of the parties' tax returns for the years 1990-1992, inclusive, it is clearly evident that the husband's earnings were substantially greater than those of the wife throughout the marriage, and therefore, so must have been his monetary contributions to the assets of the marriage. Despite his age, he has some employability. He also has superior vocational skills to those of the wife, and she has minimal employability. The wife's earnings which also were contributed to the marriage were supplemented by an inheritance from her mother's estate of $8,000 which went to pay down the mortgage on the 20 Granite Street property. The family dwelling at 193 Flanders Road, Stonington, was purchased with joint funds over CT Page 1024 30 years ago. It was mortgaged to enable the parties to purchase the 21 Grove Street property in 1966, and also to purchase the 20 Granite Street rental property in 1969. All of the parties' five properties were indeed in a sense joint ventures and their acquisition and maintenance and appreciations in value were accomplished by the efforts of both. The court concludes on the state of this evidence, that having given consideration to the parties' respective monetary and nonmonetary contributions, as it must, that their total contributions to the parties' assets were approximately equal. See O'Neill v. O'Neill, 13 Conn. App. 300, cert. denied, 207 Conn. 806 (1988).
The parties' assets acquired during the marriage the court finds to be as follows:[1]
20 Granite Street, Westerly, R.I., 12 unit rental property, with no mortgage, value: $283,000;
21 Grove Avenue, Westerly, R.I., 3 unit rental property, $130,000, with no mortgage, value: $130,000;
42 Coveside Lane, Stonington, CT., rental condominium unit, value, $160,000, less mortgage of $148,000, value: $ 12,000;
40 Coveside Lane, Stonington, CT., rental condominium unit, value, $160,000, with no mortgage, value: $160,000;
193 Flanders Road, Stonington, CT., family dwelling, value of $235,000, less mortgage of $93,000, equity of: $142,000;
Husband's interest in Portugal realty: Unknown;
Husband's Keough Plan, as of 11/26/93: $108,483; Bank accounts: $ 4,100;
Miscellaneous personal property: $ 30,000;
Husband's pension present value Unknown ----------- Total Net Assets: $ 869,583+
Against these assets they have debts of only $6,000, excluding CT Page 1025 legal fees. The husband shows gross income of $320 per week from unemployment compensation and $1,288 per week from rentals, and net income after deductions, which were not itemized as to his rental income shown, of $592 per week, omitting his pension payment of $82 per month. If his figures are credited, his net income is $610 per week. The wife shows only her $200 per week alimony order pendente lite and claims a deduction for federal income taxes of $30 per week, for a net weekly income of $170. The husband pays the home mortgage, real estate and insurance premium payments of about $255 per week total, all included in his expenses which total $716 per week, while the wife lists weekly expenses of $574 (including the home expenses paid for by the husband). The husband can begin to receive $918 per month from social security if he retires immediately; at age 65, he can expect to receive about $1,103 per month. The wife can receive $339 per month at age 62 1/2, or July 1, 1995, as her social security benefit.
The wife explained that she desired a decree of legal separation because of her "religion". As stated, the husband seeks a decree dissolving the marriage, and claims that the wife seeks the legal separation only for the purpose of maintaining a hold upon him. The wife points to no economic purpose, such as the continuation of group health insurance for her with no additional premium, for her claim of legal separation. Nor does she give any detailed explanation of the basis of that claim, other than the mere assertion of her `religion'. The court, on this issue, credits the husband's testimony. The court sees no reason to subject the parties to further litigation in order to declare a marriage relationship over, when it is in fact already over. See General Statutes 46b-65; Practice Book 472; 473. Indeed, our Supreme Court has already referred to a decree of legal separation as a `de facto' dissolution, and to a dissolution decree as a `de jure' dissolution. See Mitchell v. Mitchell, 194 Conn. 312, 321 (1984).
The court has considered all of the evidence, and its findings in the light of the statutory factors in General Statutes 46b-81 and 46b-82 and orders as follows:
A decree shall enter dissolving the marriage on the ground of its irretrievable breakdown.
The defendant shall transfer all of his right, title and interest in and to the real estate known as 193 Flanders CT Page 1026 Road, Stonington, Connecticut, to the plaintiff by quit claim deed, subject to the present encumbrances thereon which she shall pay and save the husband harmless therein.
He shall also transfer all his right, title and interest in and to the condominium known as No. 40 Coveside Lane, (Stonington Landing Condominium), Stonington, Connecticut, to the plaintiff by quit claim deed. This unit is the one free of any mortgage.
The remaining real estate shall be solely the property of the husband, including 21 Grove Avenue, Westerly, Rhode Island, 42 Coveside Lane (Stonington Landing Condominium), 20 Granite Street, Westerly, Rhode Island, and his interest in Portugal. He shall save the wife harmless from any, encumbrances thereon and the wife shall quit claim all right, title and interest she may have in said properties to the defendant.
The husband shall transfer, by Qualified Domestic Relations Order (QDRO), the sum of $90,000 from his Keough plan to the wife. The court shall retain jurisdiction over this portion of the decree to ensure that the QDRO shall comply with applicable federal and/or state law.
The husband shall pay to the wife as periodic alimony the sum of $200 per week until July 1, 1995, when the alimony payments shall be reduced to $75 per week. Said alimony shall terminate upon the death of either party or the wife's remarriage.
The wife shall take and have all of the personal property in the family home (except as set forth below), her 1989 Pontiac motor vehicle, and her checking account, free of husband's claims.
The husband shall take and have his 1988 Chevrolet motor vehicle, his checking and savings accounts, the balance of his Keough plan, his monthly pension benefit, his diamond ring, the 50 bottles of liquor, his tools and clothing.
Each shall pay his or her own attorney's fees.
All deeds or instruments required to effect the orders herein shall be executed and delivered within thirty (30) days hereof. CT Page 1027
Teller, J.