[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This memorandum pertains to a postdissolution motion for contempt filed by the defendant, Holly Magee, against the plaintiff, William Magee, and to the plaintiff's motion to open the dissolution judgment.
Some preliminary factual background is in order, and additional factual findings will be noted as needed. On August 28, 1976, the parties married. Sometime in 1983, they separated and have lived separately ever since. During this separation neither party provided financial assistance to the other, and they divided their personal belongings to their mutual satisfaction. CT Page 4436
ln early 1992, after nine years of estrangement, the plaintiff commenced the dissolution action. At that time and while the dissolution case was pending, Attorney David Mandell represented the plaintiff, and the defendant appeared pro se. In April 1992, the plaintiff claimed the matter on the uncontested dissolution list. On June 29, 1992, the case proceeded, uncontested, to judgment. The judgment incorporated the terms of a stipulation previously entered into by the parties. The plaintiff and his counsel were present at the dissolution hearing, and the defendant was absent.
The stipulated agreement provided that each party retained the property which they then possessed, and each was responsible for their own debts. Neither party claimed alimony. The plaintiff was obligated to pay $50,000, as a property settlement, to the defendant June 29, 1997.
On November 17, 1997, the defendant moved this court to hold the plaintiff in contempt for failure to pay the $50,000 on June 29, 1997. On January 15, 1998, the plaintiff moved to open the judgment based on fraud. On April 9, 1998, the court held an evidentiary hearing on these motions.
The court first addresses the plaintiff's motion to open the dissolution judgment. The plaintiff contends that the defendant intentionally understated her income by omitting overtime and rental income and by undervaluing her condominium and pension rights on the financial affidavit she submitted in conjunction with the dissolution hearing in compliance with former P.B. § 463, now § 25-30.
Proffering false information on a financial affidavit may constitute fraud justifying the opening and vacating of a dissolution judgment. Billington v. Billington, 220 Conn. 212,219 (1991). In such a case, the elements of fraud are (1) a false representation made as a statement of fact; (2) the falsity of the statement was known to the maker; (3) the statement was made with the intent to induce reliance thereon; and, (4) the other party relied on the statement to that party's detriment. Id., 217.
The movant, here the plaintiff, bears the burden of proving the first three of these elements by clear and convincing evidence and the fourth element by a preponderance of the; evidence. Barbara Weisman, Trustee v. Kaspar, 233 Conn. 531, 539
CT Page 4437 (1995). The court finds that the plaintiff has failed to prove the third element of fraud, viz. intent to induce reliance, by clear and convincing evidence, and the fourth element, detrimental reliance, by a preponderance of the evidence.
The plaintiff testified that he first encountered the stipulation and the defendant's financial affidavit contemporaneously at the dissolution hearing on June 29, 1992. He further averred that, had he known of the understatements as to the defendant's income, condominium and pension values, he would not have agreed to pay her $50,000 as part of the settlement.
The defendant, on the other hand, testified that the stipulation was agreed to without any discussion or exchange of information regarding the parties' income or assets. She noted that the agreement was reached at Attorney Mandell's office on June 23, 1992. Her financial affidavit was prepared and signed two days later on June 25, 1992, in the parking lot serving the attorney's office.
The court finds the defendant's testimony credible on these points. The stipulation, prepared by the plaintiff's attorney, was signed by both parties and dated June 23, 1992. If no agreement had been attained until the hearing date, June 29, 1992, after the plaintiff had reviewed the defendant's financial affidavit, how could his lawyer have drafted the stipulation which was dated June 23, 1992. Also, the defendant's financial affidavit was sworn to before a member of the plaintiff's attorney's staff and dated June 25, 1992, substantiating the defendant's version of the sequence of events.
The plaintiff makes no claim that the defendant made false representation other than in her financial affidavit, which he did not review before entering into the stipulated agreement six days earlier. The court concludes that the factual information contained in the defendant's financial affidavit, whether accurate or misstated, played no role in the plaintiff's decision to stipulate to the terms of the agreement on June 23, 1992, which were adopted by the trial court on June 29, 1992.
Also, because the defendant's financial affidavit was created two days after the agreement was made it is unlikely that the defendant could have intended to mislead the plaintiff into relying on that affidavit as a basis for the stipulation entered into earlier. CT Page 4438
The plaintiff's motion to open the judgment is denied.
 II.
Turning to the defendant's motion for contempt, the court finds the following facts. The judgment obligated the plaintiff to pay the defendant $50,000 on June 29, 1997, five years after the dissolution. The plaintiff has failed to meet this obligation. The defendant confronted the plaintiff in October 1997 over this failure. The plaintiff told the defendant that he could pay her $40,000 at that time but was unable to pay the remaining $10,000.
The court finds that the plaintiff's noncompliance was wilful. The burden of proving an inability to comply lies with the delinquent party. Leslie v. Leslie, 174 Conn. 399, 403
(1978). The plaintiff had five years to accumulate sufficient funds to meet his obligation and by his own admission had $40,000 available. His current financial affidavit discloses that he has equity in two pieces of real estate amounting to $144,000. This equity exists despite the plaintiff's estimate of the value of the 252 Brooklyn Road, Canterbury, property having decreased by $64,000 since his last financial affidavit in 1992. The plaintiff additionally owns $93,200 in Pfizer stock. The court holds the plaintiff in contempt of the June 29, 1992, order to pay $50,000 to the defendant on June 29, 1997.
The court orders the plaintiff incarcerated unless he pays to the defendant $50,000 plus interest at ten percent per annum from June 29, 1997 to date, $3,986.30, for a total of $53,986.30. The court suspends execution of the incarceration until June 30, 1998, on which date incarceration begins unless the plaintiff purges himself of the contempt by payment.
Under C.G. § 46b-87, the court also orders the plaintiff to pay reasonable attorney's fees for the cost of bringing this contempt motion. The court finds reasonable attorney's fees to equal $1500. This sum is payable on or before June 30, 1996.
The matter is continued to June 30, 1998, for compliance. Unless all sums ordered by this decision are paid by that date, the plaintiff must appear to address noncompliance.
Sferrazza, J. CT Page 4439