[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION de DEFENDANT'S MOTION FOR CONTEMPT (152)
CT Page 14776
The defendant moves that the plaintiff be found in contempt for his failure to fully pay to the defendant her share of the proceeds that the plaintiff received from the exercise of certain units and options.
The first issue raised in the motion is payment to the defendant for 1/2 of Morgan Stanley Equity Incentive Compensation Plan (EICP) units. On October 12, 2000 the attorney for the defendant reported that the payment was received by his client and that part of the motion was resolved.
The second issue raised in the motion is the defendant's failure to fully pay the defendant for 2715 options awarded to the plaintiff with a strike price of $18 and having an expiration date of January 31, 2005. Before the plaintiff exercised the options Morgan Stanley declared a two for one stock split and reduced the strike price to $9 per share. He claims that his obligation to the defendant was satisfied when he determined the cash spread between the share price at the time of exercise but used the original $18 strike price on half of the original 2715 options. The court notes that the presplit shares no longer existed and his options could not be exercised to acquire the pre-split shares. He exercised 5430 options at $9 a share. He testified that he considered the additional 2715 shares as another option grant although he had left Morgan Stanley in July, 1999 and the stock split in January, 2000. If the number of options had not been doubled to recognize the split then the value of the original options would have been cut in half thereby taking half of the options awarded away from him. The intent of the parties can be readily determined from the language found in 7.16:
 "The HUSBAND shall name the WIFE the beneficiary of and the WIFE will retain the death benefits, if any, associated with the (50%) percent interest until such time as the EICP option units are exercised and she receives the net value of said share."
The logical inference to be drawn from the language is that the 2715 options were viewed as an asset to be divided equally. The plaintiff testified that he relied upon the custom in the industry for dealing with stock splits and reverse splits which is to ". . . . specifically write into the documentation the words `as adjusted for splits.'" However, this agreement was not drawn for use in the industry, i.e. the financial markets, but rather as a settlement agreement between husband and wife as part of their dissolution decree where words must be given layman usage. To paraphrase Billington v. Billington, 220 Conn. 212, 219 the commercial context does not address the special considerations that are inherent in CT Page 14777 litigation over the dissolution of a marriage and analogies drawn from commercial litigation fail to respond adequately to the situation of emotional trauma commonly associated with the irretrievable breakdown of a marriage. Again at 221 "Courts simply should not countenance either party to such a unique human relationship dealing with each other at arms' length."
The court concludes and holds that the correct reading of 7.16 requires the plaintiff to share half of the 5430 options he exercised at $9 strike price utilizing the formula in said paragraph to determine her net. If counsel cannot agree on the amount due defendant then either party may request further articulation of this ruling by the court. No contempt is found and no attorney fees are awarded to either party.
So Ordered.
HARRIGAN, J.