[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION TO REOPEN JUDGMENT OF PLAINTIFF DATED 6/4/02
1. Factual and Procedural Background
A Judgment of Dissolution was entered on this case on May 16, 2000. A Separation Agreement which provided for an alimony calculation was also made part of the Judgment. Financial affidavits were supplied by both parties.
The defendant's financial affidavit listed his "Gross monthly income" from Greenwich Capital Holdings, Inc., as $8,333.00, where he was a managing director. The Separation Agreement, which had been in negotiation for many months, recited in paragraph 3.3, p. 8 that for alimony calculations the employer's contributions to the Husband for housing allowance, home leave and cost of living were not to be considered part of the Husband's pre tax employment income.
In a letter dated May 4, 2000, the defendant received a written confirmation of an offer of employment from Globe Facilities, Ltd., as an Account Executive for a total compensation package of £ 100,000 starting on May 10, 2000. The offer was "subject to contract." The base pay was set out as £ 31,000 per year or $48,050 U.S. The housing allowance was set at £ 40,000 home leave at £ 14,000 and cost of living at £ 15,000. At the base salary of £ 31,000, the average monthly salary at the U.S. rate would have been $4,004.00 (See Footnote 1, p. 2, Plaintiffs Memorandum in Support of Motion to Reopen Judgment, 6/4/02).
In a telefax dated August 8, 2000, the defendant sent a copy of the May 4, 2000 letter to the plaintiff. In his cover letter to his ex wife, the defendant stated "Attached is the Agreement I have to work for Global Facilities.". CT Page 7547
As revealed in the plaintiffs testimony at the hearing before this court on May 14, 2002, at the time she was negotiating the terms of the Separation Agreement, she was aware that her husband's company was the subject of a takeover and that "at some point he may lose his job." (p. 6 Transcript of Mrs. Lambert, 5/14/02). She knew of no other job offer as of May 16, but became aware of it on August 8, 2000. (pp. 6-11 of Transcript of Mrs. Lambert, 5/14/02). The plaintiff also stated had she known of the way the defendant's income was broken down per the new Globe Facilities, Ltd., contract, she would have rejected the Settlement Agreement. (p. 17 Transcript of Mrs. Lambert, 5/14/02).
Mr. Lambert signed his termination agreement with Greenwich Capital on 6/17/00 and received the severance pay in August of 2000. (p. 35 Transcript of Mr. Lambert, 5/14/02).
Mr. Lambert filled out his work permit and accepted the Globe offer on July 3, 2000. (p. 13, Transcript of Mr. Lambert, 5/14/02). The work permit issued on August 29, 2000. (p. 14 Transcript of Mr. Lambert, 5/14/02).
In November of 2000, Mrs. Lambert had a serious accident involving her falling off a ladder. She suffered a compound fracture of the tibia and fibula (leg), and also a fracture of her arm. (p. 15 Transcript of Mrs. Lambert, 5/14/02).
In January of 2001, the alimony payments to the plaintiff were reduced significantly. (pp. 14-IS, Transcript of Mrs. Lambert, 5/14/02). At that time Mrs. Lambert was still treating in the hospital and was unable to walk, write or drive. Her own self evaluation was that she was incapacitated. (p. 16 Transcript of Mrs. Lambert, 5/14/02).
The plaintiff filed her Motion to Reopen on 8/17/01, alleging fraud of the defendant in failing to disclose the Global job offer and its details in a timely way.
2. Law
The key case on the issue of fraud in a family case is Billington v.Billington, 220 Conn. 212, 592 A.2d 1377 (1991), on remand27 Conn. App. 466, 606 A.2d 737 (1992), cert. denied 224 Conn. 906,615 A.2d 1047 (1992). In relevant part the court said that a stipulated judgment may be opened if the judgment was by fraud:
Finally, the principle of full and frank disclosure . . . is essential to our strong policy that the CT Page 7548 "private settlement of the financial affairs of estranged marital partners is a goal that courts should support rather than undermine (citations omitted). That goal requires, in turn, that "reasonable settlements have been knowingly agreed upon." Monroe v. Monroe, supra, 194. "Our support of that goal will be effective only if we instill confidence in marital litigants that we require, as a concomitant of the settlement process, such full and frank disclosure from both sides, for then they will be more willing to forgo their contract and to settle their dispute privately, secure in the knowledge that they have all the essential information."
It is equally well established that a stipulated marital judgment may be opened if obtained by fraudulent non disclosure. Pospisil v.Pospisil, 59 Conn. App. 446, 450 (2000). The four essential elements of fraud are:
 "(1) that a false representation of fact was made; (2) that the party making the representation knew it to be false; (3) that the representation was made to induce action by the other party; and (4) that the other party did so act to her detriment. . . . Fraud by non disclosure, which expands on the first three of these four elements, involves the failure to make a full and fair disclosure of known facts connected with a matter about which a party assumed to speak." Id.
A judgment will be set aside on the basis of fraud, however, only if the movant is not barred by any of the following restrictions: (1) there must have been no laches or unreasonable delay by the injured party after the fraud was discovered; (2) there must clear proof of the fraud; and (3) there is substantial likelihood that the result of the new trial would be different. Billington v. Billington, supra, 218. See also Gregerv. Greger, 22 Conn. App. 596 (1990).
3. Discussion
The key question to be answered is: Was the failure to disclose Mr. Lambert's job offer prior to the signing of the Stipulation as to alimony and property distribution a fraudulent non disclosure? The answer is "yes." It was a material fact which if disclosed to Mrs. Lambert would have changed her mind about the alimony provision of the Separation Agreement. CT Page 7549
Mr. Lambert knew of the offer at the time of divorce term negotiations and knew of the specifics of the offer, which included an approximately 50% reduction in his base pay, the key element in alimony calculations. In the court's opinion, Mr. Lambert knew how this would have affected his later alimony obligations. His professional life was devoted to high finance. He clearly would have known of the consequences of the pay allocations. His later disclosure of the offer in August was calculated in the court's opinion. It occurred after the dust had settled from the divorce negotiations, and while his ex wife was unlikely to consult with counsel about the material portions of the letter. The net effect of the non-disclosure was to induce Mrs. Lambert to agree to the alimony calculations in the Separation Agreement. She did so to her detriment. Her alimony payments went from $8,000 per month to about $4,000 per month.
The court noted that the new company to which the defendant relocated was one with which he had prior associations, both business and social. (pp. 3-4, 50-51, Transcript of Mr. Lambert, 5/14/02). Mr. Lambert also admitted that the base pay allocation he received from the new employer was lower and unlike any he had before. (pp. 39-40, Transcript of Mr. Lambert, 5/14/02). The terms of his true employment picture were known to him and were not disclosed. He set up a new and significantly different pay package. This new package was negotiated over a period of time prior to the May 4, 2000 letter. (pp. 3-4, transcript of Mr. Lambert, 5/14/02). Yet, he never mentioned it to Mrs. Lambert until months after the divorce was finalized. (p. 44 Transcript of Mr. Lambert, 5/14/02).
Mrs. Lambert submitted her Motion to Reopen on or about 8/17/01, about a year from when the May 4, 2000 letter was first disclosed to her. The question arises as to whether her delay in acting to reopen was unreasonable. Given the timing of the disclosure and Mrs. Lambert's own personal health problems, the court does not find an unreasonable delay in her action. Also, no other claimed equitable defense has application here in the court's opinion;
4. Conclusion
The May 4, 2000 letter was an important piece of information which should have been disclosed to Mrs. Lambert. The letter, itself, is proof of the fraud by Mr. Lambert. Not only did Mr. Lambert have a written offer and a start date, there were also specifics of salary and benefit allocations, which reduced his alimony obligations by half Failure to disclose this letter before the divorce was clear evidence of Mr. Lambert's efforts to conceal important information from Mrs. Lambert and her attorney. Furthermore, in the court's opinion, the information of the May 4, 2000 letter would have had an impact on a trial court evaluating CT Page 7550 alimony responsibilities.
For all the above reasons, the Motion to Reopen is granted. So Ordered.
THE COURT
 ___________________ DOWNEY, J.