[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife commenced this action for a dissolution of the parties' marriage on the ground of irretrievable breakdown by complaint returnable to this court on March 22, 1994. She also sought custody of the minor children, child support, alimony, an equitable property division, and other relief as on file. In his answer, the defendant husband admitted all of the allegations in the complaint. He also filed a cross complaint in which he sought a dissolution of the marriage on the ground of irretrievable breakdown, custody, support, alimony, an equitable division of the parties' property, and other relief as on file. Simultaneously with this proceeding the wife sought and obtained a restraining order pursuant to General Statutes § 46b-15, Docket No. 104988, which was consolidated with this matter for all proceedings.
The parties were represented by counsel throughout, and counsel was appointed to represent the interests of the minor children. At the outset of trial, an agreement providing for joint legal custody and split physical custody of the minor children was presented to, and approved by, the court. Without objection, counsel for the children was excused from attendance and further participation in the trial. CT Page 10417
At the trial both spouses testified and submitted financial affidavits and written proposed orders. A neighbor, real estate appraiser and marine surveyor also testified. Numerous documentary materials were introduced into evidence, including tax returns, appraisal reports, photographs, and real estate settlement statements. From the evidence the court finds as follows.
The wife, whose birth name was Shelley Cone, married the husband on February 14, 1981 in Haddam, Connecticut. One of the parties to this marriage has resided continuously in the State of Connecticut for at least one year prior to the filing date of the complaint, which was March 5, 1994. All statutory stays have expired and the court has jurisdiction. There are two minor children issue of the marriage: Nazare N. Alves, born January 11, 1982 and Alexandra N. Alves, born November 6, 1990. No other minor children were born to the wife since the date of the parties' marriage. Neither parent or the children are recipients of public assistance.
The husband is 46 years old, a high school graduate with a two year associates' degree, and holds a plumbing contractor's license in this state. Throughout his career he has been associated with the building trades, first with Kendland Co., then for the State of Connecticut as an inspector, and for the last five years for the City of New London, as a building inspector. He also operated his own plumbing business as a sideline. He currently earns $737[1] per week gross, $532 per week net from his city job, and $96 per week gross, $58 per week net, from his sideline operations, for a total of $590 per week net. He obtained a discharge in bankruptcy in 1981. In 1993 he grossed $20,269 from his plumbing sideline but sustained a loss, of $1,082. His physical health is fair. However, he has contemplated suicide and has been hospitalized twice, once for stress and again for a cardiac seizure.
The wife is 36 years of age, a high school graduate, with two years of college, and holds a current Connecticut hairdresser's license. Her health is good with the exception of neck and back problems, which impair her ability to do lifting. She now works as a home health care aide, and earns $360 per week gross, $299 per week net. She has worked throughout the marriage, at different times, as a cocktail waitress, a school bus driver, as a nurse's aide in a hospital CT Page 10418 and in a nursing home, and worked on a farm, cleaning stables and tending horses. She also operated a horse business as a sideline in which she provided pony and horse and surrey rides. In 1992, she grossed $1,978, and sustained a loss of $9,240, which included $3,140 in depreciation.
The wife claims that this marriage of more than 13 years' duration became troubled in 1987. She asserts that the husband's personality changed, and he began belittling her and negatively comparing her to other women. He wanted her to be in the home more for him and the children, although she held down a full time job and worked other jobs. The couple entered into marriage counseling in 1990 which was not successful. The husband owned a number of guns, and when the wife advised him of her plans to seek a divorce in 1994, he threatened to kill himself or at least contemplated it. She obtained a restraining order and the police confiscated the guns. The parties separated and have remained apart.
The husband testified that the wife became embroiled in a succession of three relationships with other men. These arose out of her horse avocation and developed from business relationships to social friendships and socialization in the husband's absence. The wife's associations deepened, despite the husband's protestations that she moderate them, and spend more time at home with him and the children. The second relationship only ended when her male friend's wife put her foot down and he withdrew. The third relationship has ripened into a full blown love affair which continues. There is little direct evidence of adultery on the wife's part, and she denies that any of the relationships were sexual in nature prior to the parties' separation. However, it is clear that each of her male relationships were threatening to the husband and troubled him greatly. I find his testimony credible on this point. The wife made no serious, sustained effort to accommodate his wishes in that regard, and although I cannot find on the weight of the evidence that the wife entered into sexual relationships with any of her male companions prior to the parties' separation, I find her succession of male relationships and their nature and extent have deeply affected the husband and justifiably aroused his suspicions. Hence they were a substantial factor in the disintegration of the marriage. I conclude that the marriage has broken down irretrievably, and that a greater share of the responsibility for its destruction must rest with the wife. CT Page 10419
The couple accumulated a number of assets during the marriage. The major assets over which they substantially differed in valuation are their jointly owned home at 237 Taugwonk Road, Stonington, Connecticut and a 31' ketch type sailboat. The wife's real estate appraiser valued the house at $175,000 and her marine survey valued the boat at $18,000, while the husband's experts' reports put the house at $120,000 and the boat at $5,000[2]. I find that the house has a value of $155,000, less a mortgage balance of $4,286, a second mortgage (Fleet Equity loan) of $10,000, and past due real estate taxes of $2,700, leaving equity of about $138,000, and that the boat has a value of $18,000. The boat was purchased in 1987 for $18,500 and the parties made some repairs and renovations to it and maintained it in good condition. Other assets include the husband's pension valued at $12,860, an IRA account of $400; a 1985 pickup truck with an equity of $3,700; cash in banks of $150; and his tools and equipment and personal property in the home reported on his financial affidavit at $12,000. Also, he reports two automobiles, a 1972 Mercedes and a 1978 Mercedes, at $500 each. He omits to report four other small boats and a boat trailer on his financial affidavit. He also reports an account receivable of $10,000 for plumbing work done, which is actually valueless, as accounts payable for materials and labor exceed the receivable. The accounts payable are also not fully reported on his affidavit.
He also omitted to show the guns taken by the police, still in their possession, and valued by him at $300.
The wife reports on her financial affidavit miscellaneous horse equipment and household furnishings valued at $2,000, a 1984 Plymouth automobile worth $800, and a Lionel train set and miscellaneous antiques valued at $2,500. This category includes a horse surrey and buggies for which with some saddles and ponies, she paid $8,000. She no longer has the saddles and ponies. However, the court deems her valuations on the low side. The court deplores the less than punctilious and scrupulous attitude the parties and their counsel have exhibited with respect to the submission of their financial affidavits, upon which so much depends. This has hampered the court's ability to fashion its financial orders. See Billington v. Billington, 220 Conn. 212, 219-220 (1991).
Against these assets, the parties show the following CT Page 10420 liabilities. The husband, $12,087, which includes $5,000 to his mother, past due real estate taxes on the family home of $2,702,[3] a debt to one Benta of $3,000, and a jointly owned Sears bill of $1,385. The wife reports $27,233, which includes $10,000 in legal fees for this litigation, a $10,000 Fleet credit line[4] which was borrowed for her failed horse business, a student loan of $2,533, the tax bill above referred to, and miscellaneous bills, not including the Sears bill shown on the husband's affidavit.
The parties commingled their earnings during the marriage and paid their family bills from their joint funds. They purchased their house lot for $20,000 with a purchase money mortgage of $10,000 and joint savings. In 1985, they obtained a construction mortgage of $25,000, $6,242 of which was used to pay off the then outstanding balance on the purchase money mortgage; the rest was used for miscellaneous closing costs and to build their now jointly owned home. The husband did much of the work on the home. The wife also contributed to the work. The husband withdrew about $13,000 from his Kendland Co. retirement funds to pay off a $5,000 liability not discharged in his bankruptcy proceeding and to buy their present boat. He had previously purchased a sailboat, improved it and sold it at a profit.
The court concludes that the husband's monetary contributions to the acquisition, preservation and appreciation in value of the parties' assets were substantially greater than those of the wife. The wife's nonmonetary contributions in homemaking and child rearing, especially in the early years of their marriage, were greater than those of the husband. The parties have equal employability; each have significant vocational skills. The husband has had, and now has, greater earnings and a superior earning capacity to that of the wife, and thus has a greater opportunity to acquire capital assets and income in the future than the wife has.
The wife resides in the family home now, but concludes that she cannot afford to remain there, and in any event, for various reasons no longer wishes to reside there. The husband wishes to move back in and complete an addition and some other work. An investment of about $5,000 in materials and labor of about $5,000, (which the husband is willing to perform) in the opinion of the wife's appraiser, will increase the value of the house about $20,000. It appears from the evidence that, even CT Page 10421 if the improvements were not completed and the property were sold for a price in the vicinity of the court's valuation, a capital gain of over $100,000 would result.
Both parties desire that the court order the home sold, with the proceeds to be divided, in different ratios. They suggest that it be listed at the wife's appraised value. The husband further suggests that the offered selling price be periodically reduced, until the house is sold, and that each have the option to buy the house at the price offered by any bonafide purchaser. The wife further suggests that the court retain ongoing jurisdiction to resolve, disputes relating to the listing price, reductions thereto and the final sales price. Given the prior inability of the parties to agree on financial matters, even with the help of their counsel (although with the assistance of the children's counsel, they have admirably resolved their custody dispute), the court believes that their proposals would require a degree of cooperation they are not now capable of, would be impractical and unnecessarily prolong this litigation.
The court finds that the child support guidelines worksheets submitted were flawed. The wife reported net disposable income of $169 per week instead of her actual $204 per week. The husband deducted $44 per week in mandatory retirement payments in his determination of net disposable income, although social security contributions were deducted also. This methodology is no longer appropriate under the present guidelines. Therefore, the child support suggested by the guidelines as calculated by the court is $117 per week.
The husband proposes that he pay $65 per week as child support which is a substantial deviation from the guidelines. He bases this on the joint and split custody agreement, his increased expenses because of his anticipated resumption of residence in the home and the wife's decreased expenses associated with her expected new quarters, which involve a roommate.
He also claims that any final orders entered be retroactive to June 13, 1994, pursuant to an agreement purportedly reached by the parties, in lieu of a pendente lite modification hearing on his motion to modify support and alimony. The court rejects this latter claim as the "agreement" between the parties for retroactivity was vague and CT Page 10422 uncertain. The request would require the court to view the situation as it existed in June, 1994, with his financial affidavit filed June 10, 1994, and wife's financial affidavit filed July 29, 1994, and without the benefit of testimony or other evidence focusing on the circumstances then existing. This the court, in the exercise of its discretion, will not do.
With respect to his claim for deviation from the guidelines, the court finds that the first reason, that is the joint and split custody arrangement, has already in large part been included in the guideline child support determination. He points to no substantial or extraordinary visitation expenses. The other bases, his increased expenses or her decreased expenses are not, in and of themselves, appropriate deviation criteria, excepting her expense of $95 per week day care, which if not actually incurred by the wife, would reduce the husband's child support obligation as suggested by the guidelines to about $95 per week. The court finds that in this case, the distribution of assets to the parties set forth below, and the uncertainty of the wife's day care obligation, pending her move to new quarters are equitable factors which justify a finding that it would be inequitable and/or inappropriate to apply the guidelines mechanically. The court, in addition to the guidelines, must also consider all of the criteria in General Statutes § 46b-84.
The court also finds that the fees requested by the attorney for the children in the amount of $1,000 are fair and reasonable, and were reasonably necessary to ensure that the best interests of the children were protected.
The wife also claims certain monies due her from the husband on account of credit and charges, utility and oil bills, past due real estate taxes and $1,508 in repairs to the husband's truck paid by her. The court has considered these claims and determines that the claim for the truck repairs of $708 ($1,508 less $800 in the Fleet Credit line) and one-half of the oil bill of $136 have merit. These total $844. The other claims have not been proven.
The court also finds no arrearage due the wife from the husband for pendente lite orders.
The parenting education program pursuant to 1993 Public Acts No. 93-319 was ordered pendente lite. The wife CT Page 10423 successfully completed the program; the husband has yet to do so.
The court has considered all of the statutory factors in General Statutes §§ 46b-62, 46b-81, 46b-82 and46b-84 in the light of the evidence and its findings. The court has also considered the tax implications and consequences of its financial awards. Accordingly, judgment may enter dissolving the marriage on the ground of irretrievable breakdown of the marriage. The following orders shall also enter:
1) The parties shall share joint custody of their minor children, Nazare and Alexandra. The primary physical residence of Nazare shall be with father; of Alexandra, with mother.
2) Each parent shall have access with the children in accord with the following parenting plan:
a) Both children shall alternate weekends together with each parent from 9 a.m. Saturday to 7 p.m. Sunday. The child who does not primarily reside with a parent shall spend some time alone on the weekend with that parent.
b) Alternating Tuesdays together 6 p.m. to 8 p.m.
c) Christmas Day, Thanksgiving Day and Mother's Day with mother; Christmas Eve day to Christmas morning at 10 a.m.; Easter and Father's Day with father;
d) Vacation times upon 15 days prior notice;
e) At mutually agreeable times.
3) The father shall pay child support in the amount of $85 per week plus one-third of wife's out-of-pocket day care expense incurred for purposes of employment. The child support order shall become effective upon the wife's vacating the residence. Until then, the pendente lite order shall remain in effect. In addition, each shall maintain the children as dependents on their employment related group health and medical coverage, and shall equally share the unreimbursed uncovered health expenses for the children equally. An order pursuant to General Statutes § 46b-84(c) shall enter, and the support orders and parents' support obligations are subject to 1994 Public CT Page 10424 Acts, No. 94-61(b). The child support order shall be secured by immediate wage execution with payments to be made directly to the wife.
4) The wife shall quitclaim all her right, title and interest in and to the jointly owned family home known as No. 237 Taugwonk Road, Stonington, Connecticut to the husband, subject to all encumbrances thereon, including the first mortgage and Fleet Credit line and real estate taxes, presently or past due (except as set forth below) which he shall pay and save her harmless therefrom. She shall have the right to exclusive possession of said home until October 30, 1994, after which the husband shall have exclusive possession thereof. During that time she shall be responsible for the October mortgage payment and the $400 October tax payment.
5) The husband shall execute and deliver a promissory note in the amount of $45,500 to the wife. Said note shall bear interest at the rate of four (4%) percent per annum, and shall be payable with equally monthly payments of $600 per month commencing December 1, 1994 and the first of each month thereafter, until December 1, 1997, when the then outstanding principal (by balloon payment) and any accrued interest thereon, if not sooner paid, shall be due and payable. Any default in the payment of any monthly installment or of any provision in the note and mortgage shall cause the acceleration of the entire principal balance. Said note shall be secured by a second mortgage on the premises. Said note, mortgage and lien shall contains provisions for default if any monthly payment is not paid with thirty (30) days of its due date; for attorney's fees in the event of default; that casualty insurance shall be maintained by the husband on the home and boat and name the wife as a loss payee insured thereon; that default in the prior mortgages or the payment of real estate taxes when due shall be a default of this mortgage; and that the death or remarriage of the husband or the sale or transfer of the home shall cause the unpaid balance to become immediately due and payable.
6) The wife shall take, have and own, free of the husband's claims, the following: television set and VCR; kitchen set; living room couch and chairs; washing machine and microwave; twin beds; dresser and marble toy dresser; child's furniture for Alexandra; corn husker; African head; wooden horse and tricycle; one-half of the kitchen utensils; linens; CT Page 10425 her personal effects and clothing; her horse equipment; her 1984 Plymouth; and, one Lionel train set: a steam engine, cowboy, giraffe and aquarium cars. She shall pay all of the liabilities shown on her financial affidavit, with the exception of the Fleet Credit line and the balance of the real estate taxes due in excess of the $400 October payment.
7) The husband shall take, own and have, free of the wife's claims, the following: his plumbing business and any accounts receivable therefrom; the, remainder of the Lionel train equipment; refrigerator, stove, dishwasher in the home, and all other appliances, furniture and furnishings now in his possession; the mahogany table and freezer; his truck and Mercedes' automobiles; his bank and IRA accounts; his tools and equipment; and all boats and nautical accessories with the exception of the ketch, "Northern Lights," and its accessories. He shall pay all of the liabilities shown on his financial affidavit and the plumbing business liabilities, and save the wife harmless therefrom.
8) The husband shall have the dependency exemption for income tax purposes for Nazare; the wife for Alexandra.
9) The guns shall be promptly sold by the husband and the proceeds equally divided. The sales prices and terms shall be at the husband's sole discretion. The ketch "Northern Lights" and its accessories shall be sold by the parties, as soon as practicable. It shall be listed for sale with wife's marine surveyor, Westerson. If Westerson is unwilling or unavailable to accept such employment, the parties shall mutually agree on a boat broker. The net proceeds of said sale shall be divided equally. The parties shall equally pay reasonably necessary costs for storage, maintenance, insurance and repairs until the boat is sold. In the event the ketch is not sold within one hundred twenty days (120) of this decree, then it shall be sold to the first bona fide purchaser who offers a price within twenty-five (25%) of its appraised value ($18,000). The court retains jurisdiction of this matter until this order is complied with.
10) Forty (40%) percent of the husband's pension/retirement benefit is transferred to and vested in the wife by Qualified Domestic Relations Order. The court retains jurisdiction over this matter to ensure compliance with applicable law. CT Page 10426
11) The wife shall designate a portion of her Metropolitan life insurance policy to provide death benefits not less than $10,000, and name the husband thereon irrevocable beneficiary as trustee for the minor children until the youngest reaches age 18. The husband shall do likewise with his $10,000 employment-related policy and name the wife as trustee for the minor children. Each shall execute authorizations to the other enabling the other to obtain information from the carriers as to the other policy's status and good standing.
12) The husband shall cooperate with wife's ability to remain covered under his employment-related health insurance policy, pursuant to applicable law, at her expense.
13) The husband shall reimburse the wife the sum of $844 on account of payments made by her for his benefit at the rate of $100 per month commencing December 1, 1994, until paid.
14) The husband shall pay toward the wife's counsel fees the sum of $1,500 at the rate of $100 per month commencing December 1, 1994, until paid. A denial in toto of the wife's claims for counsel fees would undermine the other financial awards entered.
15) No alimony is awarded to either party.
16) All documents of title and other instruments necessary or incidental to the effectuation of the court's orders shall be executed and exchanged within thirty (30) days hereof.
17) Each party shall pay $500 in counsel fees to the attorney for the children in equal monthly payments of $50 each commencing December 1, 1994, until paid.
18) In the event of an appeal by either party, the orders relating to custody, visitation, child support and the occupancy of the family home shall not be stayed.
Teller, J.