[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff husband, 60, has brought this action against the defendant wife, 54, seeking a dissolution of their marriage which occurred on December 24, 1979 at Litchfield, Connecticut. It was the plaintiff's second marriage and the defendant's third. The plaintiff's continuous residence in this state for over one year prior to commencing this action furnishes this court with CT Page 11557 jurisdiction. No child was born to the defendant during the marriage.
After the marriage, the parties resided at the plaintiff's home on Turner Road in Thomaston, Connecticut until May, 1992 when the defendant moved out.
In 1979 the plaintiff was manufacturing manager for Torrington Company until 1987 when he assumed the additional position of chief engineer. In 1989 he became General Manager for one year. He returned to his earlier duties until he accepted early retirement at 57 on June 6, 1991. The plaintiff's last year's salary was $93,000.00.
The plaintiff and his brother own and operate a grocery convenience store. The plaintiff claims that he receives no income from these efforts. However, on a personal financial statement dated July 10, 1991 (defendant's Exhibit FF), plaintiff lists other income "DeBisschop Bros. $30,000.00." The brothers have been operating the store known as Palumba's Market, since 1980. The land is owned by them via a corporation. The plaintiff testified they received an offer of $640,000.00 for the business and the land. The land is encumbered by two mortgages totaling $450,000.00. The offer was not accepted.
The plaintiff forged the defendant's name to transfer defendant's interest in his pension. After being arrested, he was obliged to restore the plaintiff's rights.
The plaintiff currently receives $2,800.00 monthly as his pension and the defendant's widow rights will pay her $1,400.00 monthly.
The defendant, during the marriage, invested in real estate and conducted a travel agency. The plaintiff participated as a partner with defendant under the trade name E R Realty. The court finds it unnecessary to recount the various transactions. Suffice to say that the parties reached a stipulation, on file, distributing the net proceeds of an Arizona property venture.
The plaintiff strove mightily to convince the court that the defendant was unfaithful. He called one Nathan Zimmerman to support the claim. The court has concluded that, to the contrary, the defendant was pursued by this man and that the defendant enlisted the plaintiff's aid and, finally, the assistance of an CT Page 11558 attorney to stop Zimmerman's unwanted attention.
However, the plaintiff found solace in the company of one Jessie who worked in the same division as plaintiff.
In June or July, 1991, the plaintiff received, net of taxes, $65,000.00 which he hid. He lied under oath at a deposition. He has hidden stock option rights. He has disbursed all of these funds.
The plaintiff had an IRA rollover in 1985 or 1986 which has since doubled in value, as evidenced by defendant's Exhibit T, a check for over $247,000.00.
The defendant lists income exceeding $1,000.00 weekly after taxes.
The plaintiff's assets consist of:
 1423 Turner Road Thomaston (equity) $120,000.00. Thomaston land investment (no value)
 Palumba's Market (plaintiff's affidavit) 75,000.00
 Stocks 19,600.00 Paine Webber 401k 212,172.00 IRA's 195,606.00 Autos, checking account and miscellaneous 8,800.00 Retirement account 18,000.00
Disposed during suit:
 Severance and vacation package 65,000.00 Stock options 75,000.00 Retirement account (defendant's Exhibit EE) 18,000.00 ---------
This summary is a conservative estimate of the plaintiff's assets. The plaintiff claims to be a gratuitous co-signer for a friend, CT Page 11559 and, as an experienced business, knew the risks. This court can give no solace to plaintiff for such action.
There is no question that the plaintiff's testimony is unreliable. The defendant urges the court to employ the maxim "falsus in uno, falsus in omnibus". This court has instead attempted to assess the plaintiff's testimony, financial affidavits, and exhibits in an evenhanded manner. Cross examination has also proven to be an effective engine for the production of truth in this case. Again, it is possible that, despite his other fabrications, the plaintiff forgot the Shawmut IRA for $2,000.00 and the American Bank IRA for $2,000.00. The court declines to apply the maxim quoted above.
The defendant described the marriage to plaintiff as having separations and its difficulties. Since it was plaintiff's second marriage and the defendant's third, each had children whose care presented parenting problems. The plaintiff's daily consumption of alcohol also contributed to the eventual breakdown.
The defendant also had a male friend, a relationship that began in 1992, almost a year after this suit was started. The court cannot find this activity to be a contributing factor to the breakdown, Venuti v. Venuti, 185 Conn. 156. The same conclusion has not been reached regarding plaintiff's attention to Jessie Bartles, for the court accepts the defendant's testimony that the relationship began in 1988.
The defendant has been attending computer school, has arthritis, and has borrowed $90,000.00 from her mother, spending $48,000.00 on attorney's fees. To demonstrate the type of lifestyle the defendant enjoyed during the marriage, the parties made 3 trips annually to their vacation home in Arizona over an 8 year span. In dispute are two memberships in the Desert Mountain Development, a golf membership and a charter membership. The defendant made the $5,000.00 deposit and has made additional payments to preserve them.
Perhaps if plaintiff had the requirements set out inBillington v. Billington, 220 Conn. 212 impressed upon him, he would have set out his financial circumstances honestly. The court infers that his failure to do so has greatly increased the defendant's attorney's fees in this effort to uncover the plaintiff's true situation, (cf., Grayson v. Wofsey, Rosen, Kweskinand Kuriansky. et al, 231 Conn. 168). CT Page 11560
The court does not intend to order any life insurance coverage on the plaintiff's life for benefit of the defendant because of the plaintiff's age. The court is also mindful that the defendant has a vested widow's right to the plaintiff's pension as well as social security account rights, having been the plaintiff's spouse for over a decade. The court does not intend to order any further interest in the plaintiff's pension in favor of the defendant in light of the other orders made in this decision.
Having sifted through the evidence in this case, and having in mind the statutory criteria to be applied, the court enters the following judgment.
1. A decree is entered on the defendant's cross-complaint dissolving the parties marriage on the ground of irretrievable breakdown. The plaintiff's complaint, as amended, is dismissed as moot.
2. The plaintiff shall retain his interest in 1423 Turner Road, Thomaston, Connecticut free of any claim of the defendant.
3. The plaintiff shall retain his interest in Palumba's Market including the corporation interest that holds the title to the land on which it stands free of any claim of the defendant.
4. The plaintiff shall retain his interest in the property located at Salem, South Carolina and the Watertown Golf Club free of any claim by the defendant.
5. The plaintiff shall pay to the defendant the sum of $400.00 weekly as periodic alimony until the death of either party, or the defendant's remarriage.[1]
6. The plaintiff shall pay to the defendant as additional periodic alimony the sum of $269.00 monthly on the first of each month, for so long as the defendant remains covered by COBRA medical insurance. The plaintiff shall cooperate with the defendant in processing her election.
7. A wage withholding order is entered to secure the orders made in paragraphs 5 and 6.
8. The defendant shall retain the 1991 tax refund of $7,212.00 free of any claim of the plaintiff. (cf., February 1, CT Page 11561 1993 stipulation).
9. The net proceeds from the sale of real property located in Scottsdale, Arizona in the amount of $30,022.18 is ordered released to the defendant, free of any claim of the plaintiff. (cf. January 25, 1994 stipulation and court order thereon).
10. The defendant is awarded the retirement account of the plaintiff containing $18,028.53 as of August 9, 1994, (cf. defendant's Exhibit EE) and any qualified domestic relations order necessary to effect such transfer shall be submitted to the undersigned after approval, if necessary, by corporate counsel.
11. The defendant is awarded the four (4) Templeton mutual funds listed as items 1, 2, 3 and 4 on Schedule A of the plaintiff's financial affidavit dated and filed on August 9, 1994 as non-taxable transfer of IRA funds. The intent of this order is to transfer $88,950.00 plus or minus to the defendant.
12. The defendant is awarded 25% of the Paine Webber 401(k) account of the plaintiff, the intent of this order to shift $50,000.00 plus or minus to the defendant as a non-taxable transfer.
13. The plaintiff shall pay to the defendant, as an allowance to defend his action and to prosecute her cross-complaint the sum of $25,000.00 to be paid on or before the end of this calendar year.
14. The parties shall continue to own the assets they now possess and to owe the debts they now have, other than as ordered above, all without claim or contribution from the other.
Counsel for the defendant shall prepare the judgment file and any QDRO.
HARRIGAN, J.