[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff has filed for a dissolution of his marriage with the defendant. The defendant currently resides in Cambodia and was not present during the final hearing. She was represented at trial by counsel. Based upon the evidence presented, the court makes the following findings.
The plaintiff and the defendant married on December 16, 1978 in Clayton, Australia. The plaintiff has continuously resided in the state of Connecticut for at least twelve months prior to the bringing of this action. The marriage has broken down irretrievably. CT Page 2284
The plaintiff is Australian. He is currently employed as an adjunct associate professor at Yale University. He is also the director of the Cambodian Genocide Program and, as such, he is responsible for collecting evidence of crimes committed in Cambodia by the Khmer Rouge, an insurgency group with a long history of brutal killings. He presently earns a net weekly income of $853 from his employment. The plaintiff is in reasonably good health.
The defendant is forty four years old and Cambodian. The defendant is also presently in reasonably good health. In 1978, the defendant obtained a diploma of education from New South Wales University and, in 1988, she received a master's degree in sociology. According to the signed financial affidavit filed on her behalf, the defendant is currently employed in Cambodia as the interim director for PADEK, the Partnership for Development in Cambodia.
During the course of the marriage, the parties had two children, both of whom are lawful issue of the marriage: Mia-Lia, born February 19, 1984, and Derry, born April 15, 1987. The parties agreed at trial that the plaintiff shall have sole custody of the two minor children and that the defendant shall have the right of reasonable visitation with the children. The parties disagreed, however, over the issue of visitation by the children with the defendant in Cambodia.
In July 1994, the Khmer Rouge announced that they would be targeting Australians for death. The Khmer Rouge stated that they would behead Australians. At least two Australians were subsequently killed. The Khmer Rouge also publicly described the plaintiff as "an arch war criminal" and declared that he had been indicted as an enemy of the people.
The parties' children were visiting the defendant in Cambodia at the time. The plaintiff and the defendant agreed that, in light of the significant risks to their safety due to their relationship to the plaintiff, the children would return to the United States. Those risks continue to exist today.
The plaintiff and the defendant are joint owners of the marital home located at 25 Cottage Street in New Haven, Connecticut. The present fair market value of the property is $125,000. The property is encumbered by a mortgage with a balance owing of approximately $149,000. CT Page 2285
The parties are also the joint owners of residential property located at 5 Temple Street in West Brunswick, Australia. The substantial down payment paid for the purchase of the property was contributed by the plaintiff and his parents. The present fair market value of the property is $60,000. The property has an outstanding mortgage with a balance of approximately $3,000.
The plaintiff has asked the court to order the defendant to convey her one-half interest in their property in Australia to him. The defendant has asserted that the court lacks jurisdiction to enter such an order.
The court has in personam jurisdiction over the defendant. She was personally served in accordance with statute with a copy of the writ, summons and complaint in this action on December 19, 1995 while she was residing in Connecticut. She has filed an appearance through counsel in this action and she has been represented by an attorney throughout these proceedings.
In light of this court's in personam jurisdiction over the defendant, it has the power to require her to convey property, including property in Australia, to the plaintiff.[1] Ivey v.Ivey, 183 Conn. 490, 493 (1981). See also Fall v. Eastern,215 U.S. 1 (1909) and U.S. v. Ross, 302 F.2d 831, 834 (2d Cir. 1962). Such an order will be accorded full faith and credit by the courts of other jurisdictions and awarded collateral estoppel and res judicata effect. Ivey v. Ivey, supra, 183 Conn. 493 and Fallv. Eastern, supra, 215 U.S. 11-12.
The plaintiff has a retirement annuity through his place of employment with a current value of approximately $39,000. The plaintiff also has an account at Smith Barney worth $41,433 and various bank accounts with funds totaling $8,368.
The defendant currently has funds in accounts at Bank of Boston and at the National Australian Bank totaling $12,298. Her financial affidavit shows funds in the amount of $8,403 at the Cambodian Commercial Bank.
This dissolution action was filed by the plaintiff on December 29, 1995. On July 25, 1996, the defendant closed out her Smith Barney account by withdrawing $36,689. In addition, the financial affidavit completed by the defendant on February 27, 1996 indicates that the defendant had $41,000 in the account at CT Page 2286 the Cambodian Commercial Bank. The plaintiff appropriately requests that the court consider these funds as having been available to the defendant when distributing the assets of the marriage.
The current income of the defendant was a major issue in dispute at the final hearing. The plaintiff claimed that the net weekly income of $348 listed on the defendant's financial affidavit was not creditable. The plaintiff pointed to the facts that the defendant was running an organization with 81 employees, that her income from her previous employment in Cambodia was $49,500 annually, and that she failed to supply any documentation, such as pay stubs or an employment contract to substantiate her claim. The plaintiff also repeatedly expressed concern that the defendant was not available at trial to be cross-examined on her affidavit and that she left the country immediately prior to her scheduled deposition.
Each party to a dissolution proceeding has the duty of full and frank disclosure of financial information. Billington v.Billington, 220 Conn. 212, 219-220 (1991). The court may draw an adverse inference from the failure of a party to submit required financial information. Glinsky v. Glinsky, 26 Conn. App. 617, 623
(1992).
An inference that the defendant has not submitted complete and accurate financial information as to her current income is appropriate in this case. The court file is replete with efforts by the plaintiff seeking the court's assistance in obtaining financial information from the defendant. Not all of the court orders were complied with. The defendant failed to produce, in response to the plaintiff's discovery requests, the terms, conditions, and benefits of her employment which were specifically ordered by the court, Munro, J., on March 12, 1997. The defendant also did not submit at trial any documents substantiating her current income, such as an employment contract or copies of paychecks. These facts coupled with the failure of the defendant to attend the final dissolution hearing and be available for cross-examination on her financial affidavit compel the court to infer that the documentation concerning her employment would not support the income figures that she disclosed on her financial affidavit.
The court finds that the defendant has an earning capacity of $49,500 annually. The defendant's employment in Cambodia from CT Page 2287 February 1994 through October 1995 at this income level demonstrates her ability to secure such a job in Cambodia. Since this income is not subject to federal or state income taxes, her net weekly income would be $952.
The court finds that the cause of the breakdown of the marriage was the defendant's escalating emotional and physical withdrawal from the plaintiff and, eventually, from the children. The plaintiff testified that, beginning in 1988, the defendant became increasingly distant, including silence for days at a time. In February 1994, the defendant left for a job in Cambodia. Her stay in Cambodia lasted eighteen months. She returned to the United States in October 1995 but informed the plaintiff that she would only be staying for one month. Although she in fact stayed longer, her relationship with the plaintiff was severely strained. They did not live together and they argued.
In determining the orders contained herein, I have carefully considered all the relevant statutory criteria, including those contained in General Statutes § 46b-56 as they relate to custody and visitation, § 46b-81 as they relate to the assignment of property, § 46b-82 as they relate to the award of alimony, and § 46b-84 and the child support guidelines as they relate to the award of child support. The court enters the following orders:
1. The marriage is ordered dissolved on the grounds of irretrievable breakdown.
2. The plaintiff is awarded sole custody of the two minor children.
3. The defendant is awarded the right to reasonable and liberal visitation, said visitation to be agreed upon by the parties. The children may visit the defendant in Cambodia only pursuant to the written agreement of the parties, which agreement shall not be unreasonably withheld. The court finds that, given the present situation in Cambodia it is not unreasonable for the plaintiff to withhold consent at this time.
4. The defendant is ordered to sign whatever documents are required to renew Mia-Lia's passport.
5. No alimony is awarded to either party. CT Page 2288
6. The defendant is ordered to pay the plaintiff child support in the amount of $247 weekly, which is in accordance with the child support guidelines.
7. The plaintiff shall provide medical insurance for the minor children as available through his place of employment. The parties shall share equally the cost of any uninsured and unreimbursed medical and dental expenses, including psychological expenses, for the minor children. The defendant shall pay her share of said expenses within two weeks of receiving notice thereof from the plaintiff.
8. The defendant is ordered to quitclaim her entire interest in the real property at 5 Temple Street in West Brunswick, Australia to the plaintiff within two weeks of the date of dissolution. Upon receipt of the quitclaim deed from the defendant, the plaintiff shall indemnify and hold the defendant harmless with respect to the mortgage and taxes for the property.
9. The entire right, title and interest of the defendant in the real property at 25 Cottage Street, in New Haven, Connecticut is hereby transferred to the plaintiff. The plaintiff shall indemnify and hold the defendant harmless with respect to the mortgage and taxes for the property.
10. The plaintiff is awarded sole ownership of the Volvo automobile and the defendant is awarded sole ownership of the Mazda automobile.
11. The plaintiff shall retain his entire interest in his Yale University retirement annuity plan free and clear of any claim or interest of the defendant.
12. The parties shall retain ownership of their respective bank accounts, stocks, bonds and mutual funds.
13. Each of the parties shall retain the personal property currently in his or her possession except that the plaintiff shall provide the defendant with the laptop computer, the china cabinet, the defendant's CD player, CD's and albums and copies of photographs of the family and the children.
14. The plaintiff shall be solely responsible for the liabilities listed on his financial affidavit except that the defendant shall be solely responsible for the outstanding $200 CT Page 2289 liability to United Illuminating for the property at 25 Cottage Street, New Haven, Connecticut and shall be responsible for paying $400 of the liability to Orthodontic Associates.
15. Each of the parties shall be responsible for paying his or her own counsel fees, except that the court's previous order of February 3, 1997 requiring the defendant to pay attorneys' fees of $350 to the plaintiff is hereby incorporated in the court's judgment. The defendant is ordered to pay this amount within two weeks from the date of dissolution.
16. The defendant is ordered to pay the outstanding balance of $750 in attorneys' fees owed the attorney for the minor children within two weeks from the date of dissolution.
Jon M. Alander, Judge