[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter involves a motion to reopen judgment filed by the defendant CT Page 9995 and a contempt citation initiated by the plaintiff.
The parties were married on October 9, 1978. On July 7, 1999, the plaintiff commenced an action for dissolution of marriage. That complaint alleged that the marriage had broken down irretrievably.
The matter was assigned for trial before the court (Vasington, J.) on May 17, 2000. On that date, the plaintiff appeared at court for trial with her counsel. The defendant, who had filed a pro se appearance with the court on December 15, 1999,[1] came to court, but requested a continuance in order to obtain counsel.
Judge Vasington referred the request for continuance to the presiding judge, the Honorable James Kenefick, Jr. Judge Kenefick denied the defendant's request for continuance and directed that the trial would proceed before Judge Vasington.
After Judge Kenefick denied the defendant's motion for a continuance, the parties met outside of the presence of the court and discussed resolution of the case. When the parties returned to Judge Vasington's courtroom on May 17, 2000, the plaintiff's attorney reported that the parties had reached an agreement. (Plaintiff's Exhibit A, p. 3). The court then conducted an uncontested dissolution hearing at which the plaintiff testified under oath. (Plaintiff's Exhibit A, pp. 4-13).
The plaintiff's sworn financial affidavit, which was dated May 17, 2000, was presented to the court at the uncontested dissolution hearing. (See court file, No. 114).
The pro se defendant did not submit a financial affidavit at the May 17, 2000 dissolution hearing. He was placed under oath (Plaintiff's Exhibit A, p. 4) and questioned by the court about his understanding of the proposed agreement.
The following discussion transpired between Judge Vasington and the defendant at that time:
"THE COURT: Sir, have you read the agreement?
MR. MCDADE: Yes, sir.
THE COURT: Are you in full accord with it?
MR. MCDADE: Yes, sir.
THE COURT: Do you realize you're not going to get alimony? CT Page 9996
MR. MCDADE: Yes, sir."
(Plaintiff's Exhibit A, p. 13.) A written separation agreement was presented to the court at the dissolution hearing. (See court file, No. 115). It was signed by the plaintiff, her counsel, and the pro se defendant. It provided that the defendant would quitclaim to the plaintiff all of his title and interest in property located in Newbury, Vermont. The agreement also provided that the plaintiff would quitclaim to the defendant all of her title and interest in the marital residence at 523 Water Street, Canterbury, Connecticut. In consideration for that transfer by the plaintiff to the defendant, the parties further agreed as follows:
 "2. The defendant shall give to the plaintiff a mortgage in the amount of $48,400 to be payable within six months of the decree. Said mortgage shall be secured on the marital property located at 523 Water Street in Canterbury.
 3. The defendant shall make payments towards this mortgage for the next six months by paying the plaintiff's car loan, car insurance and car taxes. If the defendant is current with said payments, the payoff of the above mortgage shall be $44,450 at the end of the six month period." (See court file, No. 115).
Both parties waived alimony in their written agreement, and on the record during their appearance before Judge Vasington. At the time of the dissolution, the plaintiff, who had been married to the defendant for more than 21 years, was earning net weekly wages of $88.50 as a video store clerk.
Judge Vasington found that the parties' marriage had broken down irretrievably and granted a judgment of dissolution. He issued financial orders in accordance with the parties' May 17, 2000 written agreement.
Since the date of judgment, the defendant has not executed the mortgage referred to in the separation agreement, and has not paid the plaintiff the sum of $48,400.
On January 2, 2001, the defendant filed a motion to reopen judgment based on alleged fraud by the plaintiff. In that motion, which was dated November 28, 2000, the defendant represented as follows:
CT Page 9997 "Subsequent to the entry of the decree of dissolution, the Defendant discovered, after consulting an attorney who obtained a copy of Plaintiff's sworn Financial Affidavit dated May 17, 2000 which Financial Affidavit was not furnished to Defendant at the time of dissolution at which time he was representing himself without the benefit of counsel, that Plaintiff through fraud and misrepresentation had overvalued their Canterbury real estate at $169,000.00, when in fact it was worth $130,000.00 and had undervalued their Vermont real estate which she was seeking for herself at $35,000.00, when in fact it was worth $50,000.00. On said Financial Affidavit Plaintiff also fraudulently concealed her possession of approximately $5,000.00 worth of antiques from Defendant and the Court and claimed that $11,000.00 was due on her car when it was only $3,500.00." (See court file, No. 121).
On December 7, 2000, the plaintiff filed a motion for contempt. In it, she claimed that the defendant had refused to comply with the court's orders by failing to execute the mortgage on the Canterbury property, and by failing to pay her the sum of $48,400.
The focal point in this case is the financial affidavit that the plaintiff filed with the court on May 17, 2000.
In that affidavit, the fair market value of the marital home at 523 Water Street in Canterbury, Connecticut, was listed as $169,000. The affidavit also purported that the outstanding mortgage balance owed on the Canterbury property was $40,000, and that the overall equity in that property was $129,000.
However, credible evidence introduced before this court at hearing proved that the actual fair market value of 523 Water Street in Canterbury on the date of dissolution was considerably less than $169,000.
In 1996, the parties listed the Canterbury property for sale with an asking price of $145,000 (Plaintiff's Exhibit B, and transcript of February 5, 2001 proceedings, p. 33). Both the plaintiff and the defendant signed the listing agreement. The parties received no offers to purchase the property at the $145,000 sales price (Transcript February 5, 2001 proceedings, p. 33).
The parties subsequently listed the property for sale during the period between March 18, 1998 and September 8, 1998. They again both signed a CT Page 9998 multiple listing real estate contract with the realtor (Defendant's Exhibit 4). The sales price listed for the Canterbury property on that document was $145,000.
When the foregoing listing agreement expired without a buyer, the plaintiff and the defendant entered into a new real estate sales agreement. This listing contract ran from September 18, 1998 until March 18, 1999 and offered the 523 Water Street property for sale at an asking price of $143,900. (Defendant's Exhibit 8). Both parties personally signed this agreement. Sometime during 1998 or 1999, a prospective purchaser offered to buy the Canterbury property for $143,500. The plaintiff and defendant rejected that bid.
In addition to the foregoing evidence, the defendant offered the testimony of Kenneth T. Merrill,[2] a real estate appraiser with 27 years experience in that field.
Mr. Merrill appraised the Water Street property and opined that its current fair market value is $140,000. Mr. Merrill was shown the March 1998 listing agreement, which reflected a $145,000 asking price. (Defendant's Exhibit 4). He testified that there had been very little increase in the price of Canterbury property during the past four years. (Transcript of April 9, 2001 proceedings, p. 23). The court found Mr. Merrill's testimony about the value of the 523 Water Street property to be credible.
Based on the sales agreements for the Canterbury property, as reflected in Defendant's Exhibit 4, Defendant's Exhibit 8 and Plaintiff's Exhibit A, and the testimony of Mr. Merrill, the court finds that the value of 523 Water Street in Canterbury on the date of dissolution was $145,000.
The plaintiff testified during this proceeding that she believed the Canterbury property was worth $169,000 in May 2000 when she submitted her financial affidavit to the court. She also maintained that she and the defendant had agreed upon that value when they conferred at court prior to the uncontested dissolution hearing. The court does not credit that testimony.
Given the fact that both the plaintiff and the defendant signed three listing agreements which valued the Canterbury property at $145,000 or less during the period between 1996 and 1999, the court finds that neither party would have a rational basis to believe that the subject property had appreciated in value by $24,000 in one year. Based on all of the evidence presented, the court finds that the plaintiff knew, or reasonably should have known, that the value which she ascribed to the Canterbury property on her May 17, 2000 affidavit was inaccurate. The CT Page 9999 court also finds that the defendant did not assent to that valuation on the date of the dissolution hearing.
The defendant testified at hearing that the mortgage on the Canterbury property as of the date of dissolution was approximately $63,000 (Transcript of February 15, 2001 proceedings, p. 15 and transcript of April 9, 2001 proceedings, p. 26). An amortization schedule introduced into evidence by the defendant indicated that in May 2000, the remaining principal balance owed on the mortgage for 523 Water Street was $60,918 (Defendant's Exhibit 1). The court found Defendant's Exhibit 1 to be accurate evidence. The court finds that the outstanding mortgage balance owed on the property at 523 Water Street in Canterbury on May 17, 2000 was $60,918. The plaintiff was a joint obligor on that mortgage. There was credible evidence that both parties paid the family bills, and the court finds that either party could have easily obtained the correct payoff figure from the lender. Accordingly, the court finds that the plaintiff knew, or reasonably should have known, that the $40,000 mortgage figure listed on her May 17, 2000 financial affidavit for the Canterbury property was inaccurate.
At hearing, the defendant submitted a list of liens against the Water Street property, which he claimed had been recorded on the land records prior to the dissolution. He claimed that the outstanding liens totaled $17,013.62. The only evidence received at hearing about those encumbrances was the defendant's testimony and a handwritten abstract purportedly compiled by the defendant based on his review of the land records. (Defendant's Exhibit 2). The defendant did not submit certified copies of the liens purportedly recorded on the Canterbury land records. He did not submit supporting documentation about the underlying debts, which resulted in those liens. The court did not find the evidence offered by the defendant to be competent proof that the Canterbury property was encumbered by liens totaling $17,013.62 in May 2000. Accordingly, the court will not include those alleged lien amounts in its computation of the equity that existed in the 523 Water Street property at that time.
Having found from the evidence adduced at trial that the fair market value of the Canterbury property on the date of dissolution was $145,000, and that the outstanding mortgage balance due on that property was then $60,918, the court finds that the actual equity on May 17, 2000 was $84,082. The court further finds that the plaintiff knew, or reasonably should have known, that the equity figure of $129,000 recited in her financial affidavit for that property was not correct.
The plaintiff listed the value of jointly owned property in Newbury, Vermont on her affidavit as $35,000. That document also indicated that CT Page 10000 the property was mortgaged for $31,000 and had equity of $4,000.
The defendant also alleged that those figures were false. On June 14, 1997, both parties signed a contract to buy the Vermont property (which consists of a house and more than 10 acres of land) for $42,000. The defendant testified that he cleaned the property and rewired it subsequent to purchase. Contradictory evidence offered by the plaintiff included a recent tax assessment on the property for $20,000 (Plaintiff's Exhibit E), and testimony by the plaintiff that the value had diminished because the defendant "gutted" the house's interior when he started making repairs. The court finds from all of the evidence that the actual value of the Vermont property on the date of dissolution was approximately $42,000, with equity of $11,000. However, due to the conflicting evidence, the court does not find that the plaintiff believed that the lower value which she listed for that real estate in her affidavit was false.
Based on all of the evidence referred to above, the court finds that the equity in the Newbury, Vermont property was undervalued by approximately $7,000. The court further finds that the equity in the Canterbury, Connecticut property was overvalued on the plaintiff's financial affidavit by approximately $44,918.
The defendant testified that he was not given a copy of the plaintiff's financial affidavit at the court hearing on May 17, 2000. The court found this testimony to be credible. Furthermore, in his motion to reopen judgment, the defendant claimed that he learned about the property values that the plaintiff listed in her affidavit sometime after the dissolution, when he retained his present counsel. The court finds that the defendant did not receive the plaintiff's financial affidavit on the date of dissolution and did not see the real estate valuations which the plaintiff listed in that document at that time. Furthermore, because the defendant signed all of the listing agreements and contracts pertaining to both the Connecticut and Vermont properties, the court finds that the defendant knew the current fair market values for both parcels when he attended the proceedings at court on May 17, 2000.
As noted above, credible testimony at hearing established that the defendant did not see the plaintiff's financial affidavit at court on May 17, 2000.[3] Because the defendant never saw the plaintiff's financial affidavit on May 17, he could not have relied on that document to his detriment in connection with the agreement presented at the dissolution hearing on that date.
When he appeared before Judge Vasington, the defendant acknowledged that he had read the settlement agreement, and was in full accord with CT Page 10001 it. Although he now argues that he reluctantly signed the agreement, and was disadvantaged by his pro se status, the court is not persuaded by those arguments.
The defendant filed his pro se appearance more than four months after the return date, and approximately five months before the trial date. He had more than nine months to contact and retain counsel. Although the defendant did not supply his financial affidavit, there is evidence that he worked as a painting contractor and jointly owned two pieces of real estate at the time the dissolution was pending. There is no evidence that he could not afford the services of an attorney. The defendant testified at hearing that he did not think he needed counsel because he believed that he had reached an agreement with his wife. The defendant testified that his understanding of the agreement was that his wife would retain the Vermont property, and that he would retain the Canterbury property. (See transcript of February 5, 2001 proceedings, pp. 43 and 50.) The court finds that the defendant had sufficient time to obtain counsel, but made a conscious decision not to do so The defendant's sworn statements to Judge Vasington on May 17, 2000 indicate that he was not under duress.
During this hearing, the defendant correctly claimed that the plaintiff did not list any personal property on her May 17, 2000 financial affidavit. The defendant introduced photographs of various items of personal property, which he claimed were antiques. The defendant asserted that the plaintiff had retained those items of marital personal property and failed to list them on her financial affidavit. (See Defendant's Exhibit 6.) Employing antique guides, the defendant contended that the personal property retained by the plaintiff was worth $6,179. (Defendant's Exhibit 7.) The court does not accept that evidence as dispositive with respect to either the extent of the personal property of the marriage, or its value. Furthermore, because the defendant did not submit his own financial affidavit to the court on the date of dissolution, this court is unable to ascertain what personal property, if any, he kept, or its value. (The court also notes that the plaintiff's brother testified at hearing that the plaintiff only retained one half of the personalty from the marital homestead.)
For all of the foregoing reasons, the court is unable to make factual findings here with respect to the nature and extent of the personal property owned by the parties at the time of dissolution, or its value. Therefore, the court will not include any value for personalty in its computation of the total amount of the marital estate.
 DISCUSSION
CT Page 10002
"Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed." . . . (Internal citations and internal quotation marks omitted.) Billington v. Billington, 220 Conn. 212, 217 (1991).
A legal determination that one party has committed fraud upon another requires that the court find four essential elements. "The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." (Internal citations and internal quotation marks omitted.) Billington v.Billington, supra. See also Jackson v. Jackson, 2 Conn. App. 179, 193
(1994).
A marital judgment may be set aside on the basis of fraud if the court determines that there are no laches or unreasonable delay, that there is clear proof of perjury or fraud, and that there is a substantial likelihood that the result of a new trial would be different. Billingonv. Billington, supra, p. 218.
The court has found that the plaintiff knew, or reasonably should have known, that the value of the house in Canterbury was $24,000 lower than that which she listed on her May 17, 2000 financial affidavit. The plaintiff also knew, or reasonably should have known, that the mortgage balance on the Canterbury property was more than $20,000 higher than the $40,000 figure which she indicated on that affidavit. The court has also found that the value of the Vermont property was listed on the financial affidavit as approximately $7,000 less than what that property was actually worth. (As noted above, the court cannot find the latter figure was an intentional misrepresentation by the plaintiff.)
Based on the evidence presented, the court finds that the plaintiff submitted a financial affidavit to the trial court on May 17, 2000 which she knew, or in the exercise of due diligence reasonably should have known, contained substantial inaccuracies about the valuation of the jointly owned marital property in Canterbury.
However, the defendant admitted during his testimony at this hearing that he did not receive a copy of the plaintiff's financial affidavit on the date of dissolution. He had signed all of the contracts and listing agreements referred to above. The defendant's testimony about the alleged agreement in which he was to retain the Canterbury property and the plaintiff was to keep the Vermont property, also demonstrated that the defendant was cognizant of the fair market values of both assets on May 17, 2000. In addition, the defendant testified credibly that both he and CT Page 10003 his wife paid the family bills. Accordingly, the court also finds that the defendant knew the outstanding mortgage balances which were owed on both pieces of property, and was aware of the equity that existed in each on the date of dissolution.
Because the defendant did not see the plaintiff's financial affidavit on May 17, 2000, and because he had his own independent knowledge of the correct worth of the Connecticut and Vermont properties on that date, this court does not find that the defendant relied on the plaintiff's financial affidavit to his detriment when he agreed to the settlement provisions at the uncontested dissolution hearing.
Furthermore, based on all of the evidence proven at this hearing, the court cannot find that the results of a new trial would be substantially different from the original judgment. On May 17, 2000, the equity in the Vermont property was approximately $11,000. On that date, the equity in the Canterbury property was approximately $84,082. Therefore, the major assets of the marital estate had an approximate gross value of $95,000 on the date of dissolution. Under the parties' May 17, 2000 settlement agreement, the plaintiff retained the Vermont property (with equity of $11,000) and was to receive the additional sum of $48,400 from the defendant within six months after the decree entered. This amounts to $59,400 of the total value of the parties' major assets.
Due to the lack of the defendant's financial affidavit, there is no available information about his salary or earning capacity on May 17, 2000. It is known that the defendant had been a painting contractor for more than 20 years. The plaintiff, who had been married for more than 21 years, was then earning net income of $88.50 per week as a video store clerk. Both the plaintiff and the defendant waived alimony in the uncontested dissolution proceeding. Given the length of the parties' marriage, the income earned by the plaintiff at that time, and the overall value of the marital estate as determined by this court, it is conceivable that the plaintiff would receive some period of alimony, and/or more than 50 percent of the marital estate after trial. Hence, this court cannot find that financial orders in this case would be substantially different if a new trial were ordered.
The defendant did not prove that he relied to his detriment on the plaintiff's affidavit, or that the results of a new trial would be substantially different. Accordingly, per the common law criteria referred to above, the defendant has failed to prove his claim of fraud on a party.
The remaining issue is whether or not one or both of the parties committed fraud on the court. CT Page 10004
In its decision in Billingon v. Billington, our Supreme Court held that" . . . the concept of fraud on the court in the marital litigation context is properly confined to situations where both parties join to conceal material information from the court." (emphasis added).Billington v. Billington, supra, p. 225. See also Baker v. Baker,187 Conn. 315 (1982).
In the present case, the plaintiff overvalued a major marital asset on her financial affidavit. The defendant was unaware of this, because he did not see the affidavit at that time. The defendant, in turn, failed to provide any information whatsoever about his income or assets to the court, or his wife. His lack of candor was not importuned or agreed to in any manner by the plaintiff.
Both parties were under an obligation to provide full and accurate financial information to the court, and to each other.[4] By their independent actions, both of the parties failed to fulfill that obligation, and either misstated or withheld crucial financial information at the May 17, 2000 dissolution hearing. Such conduct constituted "a serious and intolerable dereliction" which severely threatened the integrity of this judicial matter. Grayson v. Grayson,4 Conn. App. 275, 288 (1985).
However, the court cannot find, as required by Billington, that the plaintiff and defendant acted together, or "joined" to conceal material information from the court. Accordingly, the court does not find that the defendant has proven fraud upon the court.
Since the defendant has failed to prove either fraud on a party, or fraud on the court, as those legal concepts have been defined under our common law, his motion to reopen judgment for a rehearing of financial issues in this case is hereby DENIED.
The plaintiff contends that the defendant is in contempt for violating the court's order that he pay her the sum of $48,400. The court notes that the plaintiff's post-judgment contempt citation was filed on December 7, 2000. The defendant's motion to reopen judgment was purportedly prepared on November 28, 2000 and filed on January 2, 2001. Although the court has denied the defendant's motion to reopen judgment, it does not find that it was without the color of a justiciable claim. Additionally, the court finds that the plaintiff's financial affidavit, which has been discussed at length above, was a contributing factor in this legal controversy.
The court finds that the plaintiff has not proven by clear and CT Page 10005 convincing evidence that the defendant is in willful contempt of its orders. The plaintiff's motion for a finding of contempt is also herebyDENIED.
The court does find that the defendant owes an arrearage under the judgment of $48,400 to the plaintiff. The court orders that the defendant pay said sum to the plaintiff in full within ninety (90) days of the date hereof. Until said payment is made, the debt of $48,400 owed by the defendant to the plaintiff shall be memorialized and secured in the following manner: The defendant shall, within seven (7) days of the date hereof, issue his promissory note for the sum of $48,400 to the plaintiff.[5] That promissory note shall be secured by a mortgage on the property at 523 Water Street, Canterbury, Connecticut, which the defendant shall appropriately execute in favor of the plaintiff. Said mortgage deed shall be executed by the defendant and transmitted to counsel for the plaintiff within seven (7) days of the date hereof. The mortgage deed shall reflect the indebtedness of $48,400 owed by the defendant to the plaintiff and the fact that said mortgage shall be paid in full within ninety (90) days of the date hereof. If the defendant has not already done so, he shall, within seven (7) days of the date hereof, quitclaim all his right, title and interest in the Newbury, Vermont property to the plaintiff. If the plaintiff has not already done so, she shall, within seven (7) days of the date hereof, quitclaim all her right, title and interest in the Canterbury, Connecticut property to the defendant. In all other respects, the prior judgment of the court shall remain in full force and effect.
No counsel fees are awarded to either party.
SO ORDERED.
BY THE COURT:
Dyer, J.