[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff has filed for a dissolution of his marriage with the defendant. Based upon the evidence presented at a contested hearing in this matter, the court makes the following findings. CT Page 14840
The plaintiff and the defendant were married on September 13, 1975 in Stratford, Connecticut. Two children, who are now adults, were issue of their marriage.
The plaintiff is forty-nine years old and in good health. He possesses two undergraduate degrees, one in theology and one in business management, as well as a masters degree in theology. He is employed as a supervisor at Hill Health Corporation and earns $41,028 annually. The plaintiff is also the pastor at the Powerhouse Temple, a church in New Haven, which he founded in 1976.
The defendant is also forty-nine years old and in good health. She holds a bachelor's degree in theology. She is employed as a customer service representative with the Southern Connecticut Gas Company and earns $44,304 annually. The defendant also operates a business known as Creative Christian Arts through which she occasionally performs drama, storytelling and music at various venues. Her performances are usually undertaken without charge, though at times she receives a modest donation. She derives no net income from this activity.
The parties jointly own the marital home at 1529 Ella Grasso Boulevard in New Haven, Connecticut. The property has a present fair market value of $135,000. It is encumbered by a mortgage of $126,000 and a city tax lien of at least $5,307. The property has little or no net equity. The property is currently occupied by the plaintiff and the parties' two adult children.
The plaintiff possesses a retirement plan account with the Hill Health Center with a value of $1,553 and a Cendant Corporation Employee Savings Plan account with a value of $2,159. The plaintiff also holds numerous life insurance policies that have a combined cash value of approximately $10,800.
The defendant has a 401K account valued at $42,517. She also maintains various bank accounts, one of which she holds jointly with her mother, with a total balance of approximately $2,000 and 38 shares of energy stock valued at $785.
The court finds, based on the evidence presented, that neither party is singularly at fault for the breakdown of the marriage. As both parties acknowledged, their marriage withered over many years due to a mutual lack of communication, intimacy and spiritual growth.
The defendant has requested that the court award her periodic alimony. She contends that the plaintiff receives significant financial CT Page 14841 remunerations from his church, Powerhouse Temple, and income from a business, Renaissance Alliance, LLC, which results in a substantially higher annual income than he is reporting. The plaintiff asserts that he only receives $6,000 annually from his church and that he garners no money from the business.
Renaissance Alliance, LLC is an entity that owns a 50% interest in a 22 unit apartment building at 76 Sherman Avenue, New Haven, Connecticut. The precise nature of plaintiffs legal relationship with Renaissance Alliance, LLC is unclear. The plaintiff testified that he was the president of Renaissance Alliance, LLC. At one point at trial, the plaintiff testified that he had no ownership interest in Renaissance Alliance, LLC, yet his federal income tax returns state that he holds a 50% partnership interest. The plaintiff also claimed that, although most of the apartment units were rented, the building generated no net income.
The plaintiff admitted that the church paid on his behalf the mortgage on his home and his personal electric bill "as needed." But he insisted that the total annual amount of the financial contributions which he received from his church was $6,000.[1]
The plaintiffs testimony with respect to financial matters was not credible. The evidence at trial showed that in addition to paying his mortgage and electric bill, the church has in the past paid the plaintiffs automobile insurance premiums, his phone bill, his credit card bills, his water bill, his sewer bill, his gas bill, his car registration, his home alarm bill, and his car alarm bill. The church has even paid a portion of his pendente lite alimony obligation in this case. The plaintiff also endorsed checks payable to cash issued by the church in the amount of $6,330.
The plaintiff testified at trial that the property at 76 Sherman Avenue, New Haven, Connecticut lost money every year. However, a financial statement that the plaintiff submitted on behalf of Renaissance Alliance LLC in conjunction with a loan application stated that, after payment of expenses the property netted income of $52,000 annually. Moreover, various expenses in excess of $20,000, such as real estate taxes, sewer and water, which were deducted to arrive at the net operating figure of $52,000 are not presently being paid.
The plaintiff maintains that his employment at Hill Health Center is his sole source of income and his financial affidavit states that his net income from such employment is $27,456 annually. Deposits into the plaintiffs personal checking account show that the plaintiff is receiving income far in excess of that which he has disclosed. Approximately, CT Page 14842 $62,000 was deposited into his personal checking account between December 22, 1999 and December 22, 2000. Since the $6,000 which he claims to receive from Powerhouse Temple is paid directly to his creditors as payment for his personal expenses, those sums would not appear as deposits into his checking account.
A party to a dissolution proceeding has the obligation to file a sworn financial affidavit that discloses his or her income-and expenses. Practice Book § 25-30. The duty is one of full and frank disclosure of financial information. Billington v. Billington, 220 Conn. 212,219-220 (1991). The defendant did not comply with this essential obligation. He lied about his income on his financial affidavit and in his testimony before this court. He also failed to comply with a subpoena duces tecum served upon him by the defendant commanding him to bring bank records, statements and checks for the period from March 2001 through July 2001.
Based upon the $62,000 in deposits made by the plaintiff into his personal checking account in 2000 as well as the $6,000 in personal expenses paid annually by his church, I find his gross income to be a minimum of $68,000 annually, which results in a net annual income of $46,918. After carefully considering all the criteria governing the award of alimony pursuant to General Statutes § 46b-82, particularly the considerable length of the parties' marriage and the significant disparity in the parties' income, I have determined that the provision of periodic alimony by the plaintiff to the defendant is appropriate.
Each of the parties also has motions for contempt that are pending. The plaintiff claims that the defendant should be found in contempt for falsely reporting her income and for failing to pay $250 in attorney's fees to the plaintiff as ordered by the court.
The plaintiff asserts that the defendant falsely reported on her financial affidavits that she had no other source of income other than her employment at Southern Connecticut Gas Company. The plaintiff contends that the defendant should have reported income from her Creative Christian Art business. As previously noted, the court finds that the defendant derives no net income from the performances she conducts pursuant to her business. The plaintiffs request to find the defendant in contempt on this basis is therefore denied.
On May 3, 2001, the court, Domnarksi, J., awarded the plaintiff $250 in attorney's fees in connection with a motion to compel discovery which he had filed. The defendant has not paid the fees to the plaintiff as ordered. Since it appears that the court did not designate a date by which the defendant was to pay the fees, I do not find the defendant to CT Page 14843 be in willful contempt of the court's order. The defendant is hereby ordered to pay the plaintiff the $250 in attorney's fees previously awarded by the court within thirty days of the date of this order.
The defendant claims that the plaintiff is in contempt of the court's pendente lite orders requiring the plaintiff to pay alimony of $180 weekly. On April 6, 2000, the court, Jones, J., ordered the plaintiff to pay pendente lite alimony to the defendant in the amount of $180 weekly commencing April 13, 2000. Based on the evidence presented, the court finds that the plaintiff has paid pendente alimony to the defendant through November 9, 2000. Since that date, the plaintiff has made only one alimony payment of $520.89. The court finds that the plaintiff owes a total pendente lite alimony arrearage through October 12, 2001 of $8,119.11.[2]
The plaintiff asserts that he should not be found in contempt of the court's order because he believed that the alimony order was intended to reimburse the defendant for an outstanding utility bill and that he was not obligated to pay alimony to her once the bill was paid. He also claims that he could not afford to pay alimony because he needed to financially support his adult children who were residing with him. The court finds the plaintiffs testimony on this issue not to be credible. There is no reasonable basis upon which the plaintiff can claim that the alimony order was for reimbursement of a utility bill. He also had ample financial resources to pay the alimony as ordered but simply refused to do so. I find the plaintiff to be in willful contempt of the court's April 6, 2000 alimony order.
In determining the orders issued herein, I have carefully considered all the relevant statutory criteria, including those contained in General Statutes § 46b-81 as they relate to the assignment of property and § 46b-82 as they relate to the award of alimony. The court enters the following orders:
1. The marriage is ordered dissolved on the grounds of irretrievable breakdown.
2. The plaintiff shall pay to the defendant periodic alimony in the amount of $200 weekly with the first payment due October 19, 2001. The payment of alimony shall terminate upon the death of either party, remarriage by the defendant or cohabitation by the defendant.
3. The plaintiff is awarded sole ownership of the marital home at 1529 Ella Grasso Boulevard in New Haven, Connecticut. The defendant shall convey her interest in the property to the plaintiff by quitclaim deed within thirty days of the date of this decision. The plaintiff shall be CT Page 14844 solely responsible for paying the mortgage, taxes, and liens, if any, on the property. The plaintiff shall hold the defendant harmless and indemnify the defendant with respect to any and all mortgages, liens and encumbrances on the property. The plaintiff shall make a good faith effort to obtain within 90 days a refinancing of the current mortgage so that the defendant is no longer a mortgagor.
4. The parties shall retain the funds in their individual bank accounts listed on their respective financial affidavits.
5. The plaintiff shall retain his entire interest his retirement plan account with the Hill Health Center and his Cendant Corporation Employee Savings Plan account. The plaintiff shall also retain his entire interest in the cash value of his life insurance policies.
6. The defendant shall retain her entire interest in her 401K account and her shares of energy stock.
7. The plaintiff is awarded sole ownership of the 1985 Jaguar and the defendant is awarded sole ownership of the 1991 Buick. The parties shall take whatever steps are necessary to convey title of the appropriate vehicle to the other.
8. The parties shall retain the personal property presently in their respective possession.
9. Each of the parties shall be solely responsible for payment of the liabilities listed on their respective financial affidavits.
10. The plaintiff shall pay in full to the defendant $8,119.11 in past due alimony within thirty days of the date of this order.
11. Each of the parties shall be responsible for the payment of their respective attorney's fees, except that the plaintiff shall pay $750 in attorney's fees in connection with the prosecution of the defendant's motion for contempt to the defendant's attorney within thirty days of the date of this order.
BY THE COURT
Jon M. Alander