[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO REOPEN JUDGMENT OF DISSOLUTION
On May 23, 1997 the trial court, Copetto, J., entered an order of dissolving the parties' marriage. In the dissolution judgment, the trial court rendered a clear and comprehensive property distribution.
The issue before this court is the latest in a long conflict relating to that court order. On January 17, 2002, the defendant filed a Post Judgment Motion to Reopen Judgment of Dissolution. Therein he contended that he recently became aware that the financial affidavits supplied by the plaintiff at the time of the dissolution contained significantly false information. The defendant further alleged that the plaintiff willfully concealed assets at the time of the dissolution.
I. Facts of the Case
The plaintiff, Roberta Tunick Benedetto, is the daughter of Sylvia Tunick and the late David Tunick. She has two siblings relevant to these proceedings, Stephen and Barbara Tunick. The plaintiff filed for dissolution of her marriage in 1994. In August of that year, the court received the first of a myriad of motions involving contested financial issues.[1] The pretrial discovery in this matter was extensive.
While the parties were married, the defendant managed the plaintiff's finances.[2] Among the plaintiff's assets was income from family trusts managed by her father and brother. The defendant had several commercial enterprises that operated in conjunction with Tunick family ventures.
In addition to other parcels, the Tunicks owned property located on Prospect Street in Greenwich, Connecticut. That property is the subject of these proceedings. In October 1994 the plaintiff's parents transferred the Prospect Street property to the plaintiff's siblings, Stephen and Barbara.[3] Stephen Tunick assumed control of the management of that realty. Although the Tunick parents had prepared an "acknowledgment of CT Page 16663 option" reflecting their desire that Roberta receive an interest in the property, that option was not executed at the time of the property transfer. No one ever discussed the option with the plaintiff.[4]
During the course of his half ownership of the Prospect Street property, Stephen Tunick took measures to maximize the realty's worth. As sole co-tenants of the property, Barbara and Stephen executed a series of promissory notes and a mortgage during the land's developmental stage. Only Stephen and Barbara were liable on the notes and mortgage.
The Prospect Street property was not readily marketable. The acreage was small. Improvement involved municipal acceptance of a non-conforming use. After a series of zoning appeals, the property was mortgaged and subsequently developed. Stephen sold the property in 2000, several years after dissolution proceedings in this case.
At the time of the sale, the Prospect Street property was still owned by Barbara and Stephen. Despite the fact that there was no legal obligation to the plaintiff, Barbara insisted that her sister receive a portion of the proceeds. Stephen resisted, but Barbara was adamant that she would not sell unless her sister received a share of the profits.
Barbara ultimately prevailed. In March 2000, upon the sale of the Prospect Street property, both she and the plaintiff received $75,000.[5]
The plaintiff was not represented by counsel during this transaction. She believed that she was receiving the money as a result of her sibling's generosity. A year after she received the money, the plaintiff mentioned the event to the defendant. This litigation ensued.
Clearly, Stephen controlled the family finances. He would have managed the option agreement as well had a valid one involving the plaintiff existed. During the dissolution proceedings, Stephen neither advised the plaintiff of the option nor demanded that she execute her option. The fact that he resisted acknowledging the plaintiff at the time he sold the Prospect Street property is evidence of his intent to keep that property from the plaintiff.[6]
Both Barbara and Stephen were available at the time of the Benedetto dissolution proceedings. Although they participated in the pretrial discovery and testified at the dissolution proceedings, neither testified concerning the plaintiff's alleged interest in the Prospect Street property. Nor did either ever show the plaintiff or her counsel the acknowledgment of option that the defendant now relies upon.
Regrettably, this court finds that the testimony of Stephen Tunick was CT Page 16664 inherently incredible insofar as he claimed that he discussed the deed with the plaintiff and her counsel at the time of the dissolution.[7]
No such discussion ever occurred. Had there been any such discussion, counsel for the plaintiff would have advised the defendant and his counsel. The property was encumbered with a mortgage. It certainly had less value at the time of the dissolution than existed at the time of the sale. Had she had an interest in the property, it would have been only a small portion of Roberta Tunick's entire estate.[8]
The Tunick family is not harmonious. There is clear animosity between Stephen and all other family members. He resents their recent assertion of financial independence. The acrimony was evident at trial.[9]
The plaintiff's financial affidavit at the time of the dissolution was the truth to the best of her knowledge and belief
II. Legal Analysis
A central concept in American jurisprudence is that all litigation must eventually end. Connecticut General Statutes 52-212a specifies:
 Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed.
Nevertheless, there are circumstances wherein otherwise final judgments can be reconsidered. Absent a waiver by both parties, a court has jurisdiction to open any final judgment if the moving party can establish that a judgment was obtained though fraud, duress, accident or mistake.Citicorp Mortgage, Inc. v. Tarro, 37 Conn. App. 56, 58, 654 A.2d 1238
(1995).
[Connecticut General Statutes] 52-212 requires a party moving for the opening of a judgment to make a two part showing that: (1) a good defense existed at the time an adverse judgment was rendered; and (2) the defense was not at that time raised by reason of mistake, accident or other reasonable cause. . . . The law condemns no man unheard. It takes from him no property and deprives him of no right without giving CT Page 16665 him a day in court. He may waive his opportunity to appear and defend, or forfeit his right to a hearing by negligence, but not ordinarily by inadvertence or misfortune.
In re Baby Girl B., 224 Conn. 263, 267-68, 618 A.2d 1 (1992) (internal quotation omitted; citations omitted).
In the present case, the defendant argues that he was denied a fair hearing because of fraud perpetrated by the plaintiff. "The essential elements of an action in fraud . . . are: (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury. Kilduff v. Adams, Inc., 219 Conn. 314, 329, 593 A.2d 478 (1991) (internal quotation omitted; citations omitted); Billington v.Billington, 220 Conn. 212, 217, 595 A.2d 1377 (1991).
The core of the defendant's allegations is that the plaintiff filed a fraudulent financial affidavit. Connecticut Practice Book Section 25-30 provides in relevant part:
 At least five days before the hearing date of a motion or order to show cause concerning alimony, support, or counsel fees, or at the time a dissolution of marriage, legal separation or annulment action or action for custody or visitation is scheduled for a hearing, each party shall file, where applicable, a sworn statement substantially in accordance with a form prescribed by the chief court administrator, of current income, expenses, assets and liabilities. . . . Unless otherwise ordered by the judicial authority, all appearing parties shall file sworn statements within thirty days prior to the date of the decree.
"A court is entitled to rely on the truth and accuracy of sworn statements required by [25-30] of the Practice Book, and a misrepresentation of assets and income is a serious and intolerable dereliction on the part of the affiant which goes to the very heart of the judicial proceeding." Casanova v. Casanova, 166 Conn. 304, 305,348 A.2d 668 (1974). That same obligation extends to counsel for litigants in a dissolution proceeding. Billington v. Billington,220 Conn. at 220. "This principle of complete disclosure is consistent with the notion that the settlement of a marital dissolution case is not like the settlement of an accident case. It stamps with finality the end of a CT Page 16666 marriage. Marriage is a coming together for better or worse, hopefully enduring, and intimate to the degree of being sacred. It is an association that promotes a way of life, not causes; a harmony in living, not political faiths; a bilateral loyalty, not commercial or social projects. . . . Courts simply should not countenance either party to such a unique human relationship dealing with each other at arms' length. Whatever honesty there may, or should, have been during the marriage should at least be required by the court at its end."Billington, 220 Conn. at 221 (internal quotation omitted; citations omitted).
The defendant has failed to establish the essential elements of fraud. Although there was an omission in the plaintiff's financial affidavit, that error was unintentional and insignificant. Due to her lack of financial sophistication, the plaintiff had no knowledge of her own assets. She relied upon the defendant, her brother and her accountant to provide the information needed for the dissolution proceedings. Here the defendant had substantial knowledge of the plaintiff's financial situation. He was in a better position to determine the accuracy of the plaintiff's final financial affidavit. Furthermore, the defendant had full opportunity to secure any and all information concerning the relatively minor potential property interest he now relies upon.
Although the plaintiff had an affirmative duty to disclose information concerning her potential option interest in the Prospect Street property, both she and her counsel were unaware of the interest. There never was any deception. Certainly, there never was an intent to induce the defendant to surrender a property interest or legal right.
Finally, even if the plaintiff was aware of her interest and disclosed the same to the defendant, there is no evidence that the result of the dissolution proceedings would have been different. First, this court notes that at the time of the dissolution both parties had substantial assets. Secondly, there is no evidence of the value of the option at the time of the dissolution. Having examined all information provided, it is clear to this court that the result of the dissolution proceedings would not have been changed had the potential option been disclosed.
The Motion to Reopen is denied.
JULIA DiCOCCO DEWEY, JUDGE